MILLICENT R. NUSS, Individually and as Administratrix of the Estate of OTTO NUSS, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 28748.)

Court of Claims, March 25, 1949.

*Dwight L. Murphy, James J. Barrett* and *Richard Donovan* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Harold S. Coyne* of counsel), for defendant.

GORMAN, J. At a point in the hamlet of Granby, Oswego County, 3 miles west of Fulton, New York, State Highway No. 3 intersects county road No. 8 at right angles. At 10:30 on the night of July 29, 1947, an automobile driven by the claimant's intestate, Otto Nuss, was proceeding easterly on the State highway when it collided at that intersection with an automobile driven by Jay Sawyer, which was proceeding southerly on the county road. Nuss was alone at the time and was killed instantly.

Route No. 3 approaches the intersection at a slight down grade after a curve and a dip about 350 feet to the west. County road No. 8 is slightly down grade through the intersection and drops off sharply to the south. An abandoned gas station stands on the northwest corner and trees, grass, shrubs and other intervening causes, restrict visibility from the north and west. The evidence describes a hazardous intersection and establishes that State highway No. 3 was a heavily traveled and officially designated " Thru Traffic " route. The only warning of the intersection to a vehicle approaching from the north, was a standard " Stop, Thru Traffic " sign, which had been erected by the State prior to September 18, 1944, and had thereafter

been under its control and maintenance. This sign was located 12 feet west of the macadam portion of the county road, about 112 feet north of the intersection, and the evidence is conclusive that for a long period of time prior to the accident it was bent, twisted, damaged, and most of its reflector buttons were missing or defective. The evidence further establishes that weeds, grass and vegetation, had been permitted to grow up in front of the sign obstructing any view from the north to much less than the statutory distance. The State had actual notice of the condition of this sign and of the dangerous intersection for a considerable time prior to the accident, as appears from the evidence of its maintenance foreman and from a formal letter and telephone call to its Divisional Superintendent of Public Works for the area from the chairman of the highway committee of the Board of Supervisors of Oswego County.

By article 7 of the Vehicle and Traffic Law the Legislature created the State Traffic Commission and prescribed its functions. By section 95-d of that article, it is provided that '' The state traffic commission may in its discretion order erected and maintained on any or all roads or highways which intersect a state highway, suitable signs, signals and markings warning drivers of vehicles of such intersection, directing such drivers to bring such vehicles to a stop before entering or crossing such state highway or regulating traffic entering such state highway. Such signs, signals and markings shall be erected at or near the intersecting line of such state highways and shall be plainly visible at all times for a distance of at least fifty feet.'' The traffic control signal herein involved was erected pursuant to the statute for the purpose of regulating cross traffic on the county road at its intersection with the State highway. Its sole purpose was to protect the intestate, and others similarly situated, from accidents at this intersection. (*Steitz* v. *City of Beacon,* 295 N. Y. 51, 56.) The statute authorizing its installation provided for maintenance by the State of such sign and of the surrounding terrain to insure at least 50 feet visibility to the north. Upon erecting the sign, this then became the State's duty.

We think conduct which has proceeded to such a stage that inaction would reasonably result in positive injury, procreates a duty to go forward. Condonation of failure to so proceed, would seem to constitute an unreasonable aberration. '' It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting

carefully, if he acts at all ''. (*Glanzer* v. *Shephard,* 233 N. Y. 236, 239.) Failure to perform a statutory duty after performance has been undertaken, constitutes negligence. (*Foley* v. *State of New York,* 294 N. Y. 275; *Van de Walker* v. *State of New York,* 278 N. Y. 454, revg. 253 App. Div. 226; *LeBeouf* v. *State of New York,* 281 N. Y. 737; *Ziehm* v. *State of New York,* 270 App. Div. 876.) Other than an ordinary crossroad sign considerably west on Route No. 3, and a stop sign south of the point of collision on the county road, this was the only sign which the State had installed to control the flow of traffic at the intersection. It was the duty of the State's employees to eye it vigilantly and to maintain it in proper repair, alignment and position. (*Calihan* v. *State of New York,* 36 N. Y. S. 2d 840, affd. 266 App. Div. 815.)

The evidence supports the conclusion that the efficacy of the sign, during the nighttime at least, for several months prior to the accident, was tantamount to no sign at all. Thus, traffic upon the State highway was invited into the intersection with no regulation of cross traffic on the county road. The intention of that portion of section 95-d of the Vehicle and Traffic Law, relative to compliance with stop signs, is to notify a motorist that he is approaching an intersection and to require him to stop his vehicle at or close to the place where he would naturally enter the intersection. (*People* v. *Ubertini,* 182 Misc. 634.)

Claimant's intestate had the right of way because he was approaching from Sawyer's right (Vehicle and Traffic Law, § 82, subd. 4) and because Sawyer was entering the State highway from an intersecting county road against a stop sign (Vehicle and Traffic Law, § 95-d). A right of way is not inflexible and absolute. It will establish precedence when rights might otherwise be balanced. It is one of the factors to be considered by the triers of the facts. Priority in time in reaching the intersection is also only one of the elements to be considered in determining the reasonableness of the care exercised. (*Geyer* v. *International Ry. Co.,* 210 App. Div. 574, affd. 240 N. Y. 626; *Dorochuk* v. *Skrobot,* 231 App. Div. 660, affd. 257 N. Y. 530.) '' Every crossing accident differs; speed, surroundings, relative distance from the meeting point, all play an important part in determining reasonable care ''. (*Cherubino* v. *Meenan,* 253 N. Y. 462, 465; *Baker* v. *Close,* 204 N. Y. 92.)

If Nuss was cognizant of the stop sign, his care at the moment was measured on the assumption that he was traveling on a through way and the sign was in effective operation. (*Foley* v. *State of New York,* 265 App. Div. 682.) Under such circum-

stances, he might reasonably have assumed that such sign would be obeyed by southbound drivers. (*Crowley* v. *Fifth Ave. Coach Co.,* 249 App. Div. 408; *Merkling* v. *Ford Motor Co.,* 251 App. Div. 89; *Shea* v. *Judson,* 283 N. Y. 393.) Knowledge of the sign's import would have imposed upon Sawyer the duty of stopping and then crossing, only when it was reasonably safe to proceed. (*Ward* v. *Clark,* 232 N. Y. 195.) If he saw the sign he would undoubtedly have been guilty of reckless driving, which is a misdemeanor. (Vehicle and Traffic Law, § 58.) He certainly would have violated the provisions of section 95-d of the Vehicle and Traffic Law. The evidence does not support either conclusion.

Here was an executive of a large plant engaged in conveying his wife and children home from a Bible conference, in the nighttime, along a strange county road. He observed the school sign which was properly erected and maintained. He may have used poor judgment after first acquiring knowledge of the Nuss car, in attempting to beat it across the intersection, but such conduct in an emergency may be consistent with reasonable care. (*Leslie* v. *Robinson,* 293 N. Y. 911; *Van Dusen* v. *State of New York,* 112 Misc. 15, 18.) The potencies of protection that reside in proper warning have illustration in the case at hand. If Sawyer had seen the sign, it is improbable that he would have driven into the intersection. Had this sign been properly maintained and visible to him at least 50 feet to the north on that occasion, he would have had approximately 150 feet in which to obey its mandate. It is apparent that its uselessness for its intended purpose not only contributed to the accident, but that it was readily foreseeable, if not inevitable, that such an accident would occur under the situation which had been allowed to exist.

The State suggests its own exoneration by reason of intervening negligence. It is well established that where harmful consequences are brought about by intervening and independent forces, the operation of which might reasonably have been foreseen, there is no break in the chain of causation of such character as to relieve the actor from liability. (*Carlock* v. *Westchester Lighting Co.,* 268 N. Y. 345, 350; 45 C. J., Negligence, § 495; Restatement, Torts, § 449.) Under the circumstances, we find no evidence sufficient to conclude that Sawyer's negligence was of such an extraordinary nature as to constitute a superseding cause. The chain, or net of causation, remained unbroken and any negligence of his does not relieve the State

from liability. (*Foley* v. *State of New York*, 294 N. Y. 275, *supra*; *Sherman* v. *Millard*, 144 Misc. 748, 753.)

The burden of proving contributory negligence is on the State. (Decedent Estate Law, § 131.) Claimant, in this case, is not held to the high degree of proof required in a case where the injured person can himself describe the occurrence. (*Noseworthy* v. *City of New York*, 298 N. Y. 76.) The only disinterested eyewitness testified the Nuss car was traveling on its own side of the road at a moderate speed. Upon all the evidence, we find the State has not sustained its burden.

In the accompanying decision, an award has been made to claimant for the pecuniary loss she has sustained.