ANNIE P. GUREVITCH, Individually and as Administratrix of the Estates of MAX GUREVITCH and Another, Deceased, et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim Nos. 31495, 31784, 31828, 31829 and 31882.)

Court of Claims, March 20, 1954.

*Lewis C. Ryan* and *John F. Gates* for Annie P. Gurevitch, individually and as administratrix, claimant.

*Benjamin A. Quitt* for Leo Blum and another, claimants.

*David Perman* and *Sigmund Schwarts* for John N. Folmar and another, claimants.

*Anthony Rizzo* for Joel Stephens, claimant.

*Nathaniel L. Goldstein, Attorney-General (Frank M. Noonan* of counsel), for defendant.

RYAN, J. On September 9, 1943, a standard STOP sign was placed on the west side of Model City Road about forty feet north of its intersection with Route 104, a State Highway, in Niagara County. The sign was placed pursuant to a general order of the State Traffic Commission. On Monday, July 14, 1952, the sign was not erect so that it could be seen and read by southbound travelers on the road but was lying face down. It had been in that position at least from Friday, July 12, 1952, and, in all likelihood, four weeks before that. Certainly the sign had been down long enough for the State of New York to have had constructive notice thereof.

The claimant Smithart spent Sunday evening, July 13, 1952, with a friend, Kervin, not called as a witness, who, according to Smithart, was home on furlough from the armed services. They were out late. Kervin was also a " buddy " of the claimant Chavers. Neither Smithart nor Chavers went to work on Monday morning. Folmar, who joined the party about 4:00 P.M., was unemployed because of a layoff, and Stephens did not work that day so that he would be free to meet Smithart and Chavers, which he did at about 9:30 or 10:00 A.M., when Smithart was still in bed. The day was spent in " killing time ", driving about from Niagara Falls to Tonawanda and back, in shooting pool and drinking beer, playing pinball machines, meeting some girls, planning a swimming party, which was not carried out, and finally, in the late afternoon, driving to Model City, where the four walked out of the village hotel without paying for the beer which they had each consumed there, because none of them had any money. Stephens, it was said, had been endowed with the wherewithal at one time but had lost his wallet somewhere, sometime during the day when wrestling with Smithart in a friendly tussle.

The touring was done in Smithart's automobile and he was operating it. When the group left the Model City Hotel they first went north but within a very few minutes drove south past the hotel and towards Route 104.

Although Smithart denied that he had any previous acquaintance with the intersection of the Model City Road with Route 104 and Folmar testified that they had reached Model City that day by a roundabout way and Chavers said that he had never been over the road before, the fact is that Model City is in close proximity to Route 104, that to reach it from Niagara Falls by any other route would indeed be roundabout (State highway map) and that there is testimony from the tavern keeper that when Smithart and the others approached his place of business they came from the direction of Route 104.

Whether or not he had ever driven through the intersection before, in any direction, Smithart, after he left the Model City Inn, became aware that he was approaching it for he saw the intersection sign placed at 250 to 300 feet to the north of Route 104 and slowed " to an extent, not too much " from his speed of thirty-five to forty miles per hour. Indeed Smithart admitted that he knew he was approaching the intersection. He had seen traffic to his left, the east, on Route 104 and, although he seeks to charge his failure to see traffic coming from his right, the west, to the existence of a cornfield and bushes and a fence along the west side of Model City Road, and to the setting sun, he admitted that, if he had looked, he could have seen to the west for at least three or four tenths of a mile from a point twenty-five feet north of Route 104. He could, we believe, have seen further to the west and from a point farther to the north, as he testified upon an examination before trial. There were no buildings in the northwest quadrant of the intersection for approximately 500 feet. As for the sun, if it was as low in the sky as Smithart testified, an added duty of caution was imposed upon him. Actually we doubt that the sun was " sinking and at a level that came into your eyes " for the reason that on July 14, 1952, in the area of the scene of the accident the sun set at 7:52 P.M. Eastern Standard Time (World Almanac [1952], pp. 769, 776, 784). The accident occurred at 6:45 P.M. Eastern Daylight Saving Time. Smithart testified that he could have stopped but did not and indeed made no attempt to stop but went through.

At about 2:30 P.M. on July 14, 1952, Max Gurevitch left Toronto, Ontario, driving his automobile in which he had as passengers his wife Annie Gurevitch, their daughter Deanna, aged ten years, and the claimants Judy and Leo Blum and their two-year-old child. At about 6:45 P.M. Max Gurevitch was driving east on Route 104 at forty-five miles per hour. He

arrived at the intersection of Model City Road just as Smithart came through from the north. Smithart's automobile hit Gurevitch's automobile slightly to the front of the center of the left side. The point of contact of the Smithart automobile was on its right front side. On the highway the point of collision was approximately two feet to the south of the center of Route 104 and slightly to the east of the center of the Model City Road. As a result of the impact Max Gurevitch and his daughter were killed and Annie Gurevitch and Judy and Leo Blum sustained serious personal injuries. Although Max Gurevitch passed a sign indicating he was approaching the intersection and another sign reading '' 30 M.P.H.'', both located on the south side of Route 104, the defense here has not met its burden of showing he was guilty of contributory negligence. There is no imputation of contributory negligence to any of his passengers.

At the conclusion of the trial we dismissed Smithart's suit against the State because he had failed, in our judgment, to show his freedom from contributory negligence. As a matter of simple justice, it seems to us that under the circumstances his negligence might well be imputed to his passengers, Folmar, Chavers and Stephens, all of whom sustained personal injuries in varying degrees. But they were his guests and were not engaged with him in a joint business enterprise (Restatement, Torts, § 491, subd. c), although they were, at the moment of the collision, mutually running away from paying their bill at the inn. There had been considerable drinking of beer during the afternoon but the degree of its effect upon them was not proved to be so great that it could be said that Smithart was intoxicated, that any of the others knew that he was, or that they were, themselves, intoxicated. (See *Cunningham* v. *Erie R. R. Co.,* 137 App. Div. 506, and *Kinnie* v. *Town of Morristown,* 184 App. Div. 408.) Hence, as a legal proposition, the three must be absolved from the imputation of the driver's negligence.

The crux of this case is: what was the proximate cause of the accident? We believe it was Smithart's reckless and negligent driving. But the claimants lay the blame at the door of the State of New York for its failure to have the STOP sign erect and in place to greet and warn Smithart after constructive, if not actual, notice that the sign was down. If this fact was a contributing cause of the collision, the State must respond in damages to all concerned, except Smithart, whose claim we have already dismissed.

The claimants rely on those cases wherein the State heretofore has been held liable for highway accidents where traffic warning signs and signals have been absent. (*Eastman* v. *State of New York*, 303 N. Y. 691; *Van de Walker* v. *State of New York*, 278 N. Y. 454); inadequate (*Barna* v. *State of New York*, 293 N. Y. 877); out of repair (*Foley* v. *State of New York*, 294 N. Y. 275); or neglected (*Nuss* v. *State of New York*, 301 N. Y. 768). But each case must be decided upon its own facts.

Of the several cases cited, *Nuss* v. *State of New York* (*supra*), seems most favorable to claimants' contention. But there are some important facts therein which distinguish it from the case under consideration as disclosed in the record and referred to in the opinion of Judge GORMAN of this court (195 Misc. 38, 42), and in the dissenting opinion of Mr. Justice McCURN in the Fourth Department (276 App. Div. 300). Nuss, like Gurevitch, was proceeding easterly on a main highway and had the right of way over an automobile approaching on an intersecting road from the north. But in the *Nuss* case the southbound automobile was driven by Sawyer " an executive of a large plant engaged in conveying his wife and children home from a Bible conference, in the nighttime, along a strange country road." Sawyer " testified that he was watching the road on both sides and alert for traffic signals. He contends that he did not know he was approaching an intersection until he was quite near the intersection when he saw the lights of the Nuss car. He thought he lacked sufficient space in which to stop and tried to escape collision with the Nuss car by speeding up and attempting to pass in front of it." (*Nuss* v. *State of New York, supra,* p. 304.)

It was the judgment of the Court of Claims " that there was no evidence sufficient to permit a conclusion that the second motorist's negligence was of such an extraordinary nature as to constitute a superseding cause." Mr. Justice McCURN said (p. 304): " the fact that the acts of the drivers of the cars intervened to bring about the accident does not create a superseding cause ". The Court of Appeals, with two judges dissenting, upheld the dissent in the Fourth Department and reinstated the judgment of the Court of Claims.

Smithart, unlike Sawyer, was driving in broad daylight with full awareness that he was approaching the intersection. As has been demonstrated hereinabove in our review of Smithart's acts, he proceeded recklessly into it and hit the Gurevitch auto-

mobile with full force. Upon all the evidence we reach the conclusion that Smithart's gross negligence was a superseding cause. We therefore direct dismissal of each of these claims. Enter separate judgments accordingly.