BYRON VAN TUYL, by MARCIA VAN TUYL, His Guardian ad Litem, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 32846.)

ROBERT VAN TUYL, JR., by MARCIA VAN TUYL, His Guardian ad Litem, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 32847.)

CATHERINE VAN TUYL, by MARCIA VAN TUYL, Her Guardian ad Litem, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 32848.)

MARCIA VAN TUYL, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 32849.)

ROBERT VAN TUYL, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 32850.)

ROBERT COWLES, as Administrator of the Estate of ROBERT R. COWLES, Deceased, Appellant, *v.* STATE OF NEW YORK, Respondent. (Claim No. 32876.)

Fourth Department, July 9, 1958.

*William F. Fitzpatrick* for appellants.

*Louis J. Lefkowitz, Attorney-General* (*Jean R. McCoy* and *Paxton Blair* of counsel), for respondent.

GOLDMAN, J. We have here six appeals from judgments of the Court of Claims which after a trial dismissed all of the claims on the ground that the sole proximate cause of the accident in which the claimants were injured was the negligence of the driver, Robert Van Tuyl.

The claims arose as a result of claimant Robert Van Tuyl's automobile going off the highway on Route 173 in Onondaga County about 9:10 P.M. on July 30, 1954. It was dark at the time, the night was clear and the pavement dry. This claimant

was operating his automobile in a northerly direction when he came upon a left-hand curve and went off the right-hand edge of the pavement along and across the shoulder and into a ravine on the east side of the highway. Route 173 is a much travelled, two-lane, black top, macadam highway about 18 feet wide, with shoulders about 2½ to 3 feet wide composed of packed sand or dirt, loose stones, pebbles or gravel.

Plaintiff operator testified that the night in question was the first time that he had ever been on this road, that he was on his way to a drive-in theatre, accompanied by his wife, Marcia, his three small children, Byron, Robert, Jr., and Catherine, aged 3, 6 and 5 respectively, and his nephew, Robert Cowles, 11 years of age. He stated that his car was in good mechanical order and the brakes and lights were in good condition. As he approached the ascent of a knoll or hill he was bothered by the bright lights of southbound traffic coming over the hill toward him. He testified he was traveling about 40 to 45 miles per hour at this point and first realized that he was on a curve when he saw the gate posts of a home straight ahead of him a distance of about 50 feet. The driver told about his efforts to negotiate the curve which turned sharply to the left, but could not avoid going on the shoulder of the road where his automobile skidded on pebbles. Immediately next to the east edge of this shoulder the ground dropped off sharply into a ravine six to eight feet deep and the car crashed through high weeds, bush and trees, which obscrued the ravine, and all of the occupants were seriously injured. The infant intestate Cowles was so critically hurt that he died some 19 hours later.

It is undisputed that there was a single sign about 400 feet south of the south end of the curve and facing northbound traffic, which was of cast iron construction, painted black on white, which read " WARNING CURVE " with an arrow pointing to the left. As shown in the exhibits, the sign was off the shoulder of the road with high shrubs and bushes behind and to the sides of the sign. It was not reflectorized.

Witnesses testified for the claimants that the type of sign was obsolete and was not in conformity with the practices directed in the Manual of the New York State Traffic Commission. It is further undisputed that there were no warning signs as to speed. A civil engineer who inspected the curve and the vicinity took measurements and testified that 50 miles per hour would not be a safe speed for this curve and that a safe speed would be between 30 and 35 miles per hour. He

further stated that good practice required the banking of this curve to elevate the outer edge above the center and inner edge and that the curve was not in accordance with this practice for safe construction. This witness, whose testimony was not contradicted, stated in his opinion that the curve was one of considerable hazard and that good practice required the use of cables or guard posts along the shoulders of the curve. The supervisor of the town in which the accident occurred testified that for two years prior to this accident he had received several calls from persons complaining of the dangerous condition of the curve and that on each of those occasions he called the State Department of Public Works and directed the attention of the district engineer's office to this condition. A civil engineer, employed by the State district engineer's office testified from his weekly reports that the "Shoulder[s] [were] low in places and generally narrow throughout". Another witness testified to other accidents at the point of this curve.

The Court of Claims Judge found that "the evidence of the condition of this highway and the shoulders and the lack of adequate warning signs are sufficient to establish negligence on the part of the State". This finding is amply supported by testimony and there can be no doubt of the negligence of the State. The Trial Judge, however, dismissed the claims of the passengers as well as the driver and found that "the sole proximate cause of the injuries was the negligence of the driver of the motor vehicle and not the negligence of the State". This finding seems to disregard completely a substantial part of the evidence dealing with the dangerous condition which the roadway and the inadequate signs presented to travelers on that highway. This court considered a very similar situation in *Applebee* v. *State of New York* (284 App. Div. 532) and made this pertinent observation with reference to the inadequacy of the signs (p. 535): "Had such a sign been maintained at the intersection on the day in question, Miss Steinmiller would have had warning of the intersection while she was still at a minimum distance of eighty-six feet therefrom. What is of still greater moment, such sign would have given Miss Steinmiller warning of the need to take appropriate action and bring her car to a complete stop as required by statute before entering this dangerous intersection. The sole purpose of the sign was to regulate cross traffic at the intersection and was to protect travelers upon the main highway from accident at the intersection. We may not assume that adequate warning signs would not have been heeded (*Nuss* v. *State of New York*,

195 Misc. 38, revd. 276 App. Div. 300, revd. 301 N. Y. 768) but may assume that had the stop sign been in position Marilyn Steinmiller would have observed it and stopped pursuant to its mandate.'' Although this case was reversed by the Court of Appeals (308 N. Y. 502) that court approved the principle just stated by its affirmance of *Gurevitch* v. *State of New York* (284 App. Div. 717, affd. 309 N. Y. 711). In that appeal this court enunciated the rule which we believe controls the instant case in this statement (p. 720): '' We may not assume or speculate that adequate warning signs would not have been heeded (*Nuss* v. *State of New York*, 195 Misc. 38, revd. 276 App. Div. 300, revd. 301 N. Y. 768) but may assume that had the stop sign been in position Smithart would have observed it and stopped. It is a fair conclusion we believe that ' adequate and proper warning would have resulted in a slower speed and in a quicker realization of the dangers ahead '. (*Canepa* v. *State of New York*, 203 Misc. 694, 698, revd. 282 App. Div. 145, revd. 306 N. Y. 272.) ''

Certainly we may assume that if adequate signs, warning of the curve and of the speed limit required to travel this curve in safety, had been erected they may well have prevented the tragedy which befell the occupants of the Van Tuyl automobile. We cannot believe that the negligence of the State played no part in the happening of this accident. The record clearly indicates that the State's negligence was one of the proximate causes and combined with the negligence of the driver, which the Court of Claims found and with which we agree, caused this accident. '' The negligence of the defendant cannot be excluded, as one of the actual causes of the accident, unless it can be said with certainty that, even if the defendant had not been negligent, the accident would nevertheless have happened. It is not enough to speculate ' that the same harm might possibly have been sustained had the actor not been negligent ' (Restatement, Torts, § 432, comment c).'' (*Rugg* v. *State of New York,* 284 App. Div. 179, 182.)

There is no evidence of any contributory negligence on the part of any of the passenger claimants. Justice requires that they be adequately compensated by the State for the injuries they sustained. The judgment in the appeal of Robert Van Tuyl should be affirmed and the judgments appealed from by all other appellants reversed and judgments hereby directed to be entered in favor of all claimants, except Robert Van Tuyl, and the cases of said claimants remitted to the Court of Claims to assess damages and to enter judgments accordingly.

All concur. Present — McCurn, P. J., Kimball, Williams, Goldman and Halpern, JJ.

(Claims Nos. 32846, 32847, 32848, 32849 and 32876.) Judgments reversed on the law and facts, with costs, and judgments directed in favor of the claimants and cases remitted to the Court of Claims to assess damages and to enter judgments accordingly. Certain findings of fact disapproved and reversed and new findings made.

(Claim No. 32850.) Judgment affirmed, without costs of this appeal to either party.