JOSEPH F. CROWLEY, Respondent, *v.* FIFTH AVENUE COACH COMPANY, Appellant.

WILLIAM E. PHILLIPS, Respondent, *v.* FIFTH AVENUE COACH COMPANY, Appellant.

First Department, January 15, 1937.

*Henry J. Smith* of counsel [*Joseph L. Zelaskow* with him on the brief], for the appellant.

*Fred P. Harrington* of counsel [*John F. Mulvey* with him on the brief; *Rafferty & Brown*, attorneys], for the respondents.

GLENNON, J. The accident out of which these causes of action arose occurred on January 24, 1933, about seven-fifteen A. M. at One Hundred and Twenty-seventh street and St. Nicholas avenue, borough of Manhattan. It involved a collision between a fire

engine and the defendant's omnibus. Crowley was driving the fire apparatus from Engine House No. 37, located on the north side of One Hundred and Twenty-sixth street just west of Amsterdam avenue, in answer to an alarm from a box at Seventh avenue and One Hundred and Thirty-second street. Phillips was riding on the rear end of the engine, which was proceeding in an easterly direction on One Hundred and Twenty-seventh street, a one-way west-bound street. The light on St. Nicholas avenue was red for east- and west-bound traffic. The defendant's bus was proceeding in a southerly direction on St. Nicholas avenue with the green light in its favor. Crowley first saw the bus approaching One Hundred and Twenty-seventh street when it was a distance of some forty to sixty feet north of the north curb of that street when he was at the westerly building line of the avenue.

It is claimed by the plaintiffs that the siren and bell attached to the engine were sounded almost continuously immediately before the accident. When the engine reached the westerly side of the avenue it was traveling at a speed of about ten miles per hour. At that time Crowley had his foot on the brakes but made no effort to stop the engine, and in fact released his brakes thereby accelerating the speed. He assumed, apparently, that the bus could be brought to a stop so as to give the engine the right of way.

It is not disputed that at the point where the accident occurred there were houses which blocked the view of the side street. The bus driver on seeing the engine coming out of the west-bound street applied his brakes and swerved to the left. The skid marks of the bus, which weighed five tons, showed that it slid along for twenty-nine feet seven inches before it was finally brought to a stop at the point where the collision occurred. The driver of the bus asserted that he did not hear any siren or bell, and the conductor gave testimony to the same effect. Ten disinterested witnesses, eight of whom were passengers on the bus, failed to hear any signal before the collision occurred. A taxicab driver operating his cab a distance of some sixty feet behind the bus heard no siren or bell. Another disinterested witness who stood in a doorway of a cigar store on the northwest corner of One Hundred and Twenty-seventh street and St. Nicholas avenue, said that the siren was not sounded until the time of the crash. One James Focarlie, who was driving a sanitation department truck, called as a witness by the plaintiffs, said that he heard the siren when he was about twenty feet north of One Hundred and Twenty-seventh street, and still he turned west into that street not knowing from which direction the sound came. Several witnesses who were called by the plaintiffs gave testimony to the effect that the siren and bell

were continuously sounded. A police officer, who was a passenger on the upper deck of the bus, said that somewhere between One Hundred and Twenty-eighth and One Hundred and Twenty-ninth streets he heard the siren — on several occasions. It became more distinct, according to him, as the bus approached One Hundred and Twenty-seventh street. However, he did not look for a fire engine.

Bearing in mind the unusual set of circumstances with which the operator of the bus was confronted at the time of the collision, coupled with the short space of time that must have elapsed immediately preceding the accident, we are at a loss to understand how this defendant can be held responsible in negligence. If eight of the defendant's passengers were unable to hear the sound of the siren or bell, it is fair to assume that the testimony of the operator was true when he stated that he did not hear any warning signal. The accident was entirely unavoidable, at least in so far as the bus driver was concerned. As we have seen, the lights were in his favor and, furthermore, he was operating the bus in a lawful manner immediately prior to the accident. He, as a careful, prudent person had the right to assume that no vehicle would be operated against the traffic lights in an easterly direction on a west-bound one-way street.

A somewhat similar situation arose in *Garrett* v. *City of Schenectady* (268 N. Y. 219). There plaintiff recovered for personal injuries sustained by him as a result of a collision between defendant's fire truck and an automobile in which plaintiff was riding. In writing the opinion for the unanimous court dismissing the complaint, Judge LOUGHRAN said in part: " ' Traffic on the highways, whether by land or sea, cannot be conducted without exposing those whose persons or property are near it to some inevitable risk; and that being so, those who go on the highway * * * may well be held to do so subject to their taking upon themselves the risk of injury from that inevitable danger.' (BLACKBURN, J., in *Fletcher* v. *Rylands*, [1866] L. R. 1 Ex. 265, 286.) We do not say that in the first instance plaintiff accepted a chance that no prudent man would have taken. No more can it be said that defendant's driver, doing a lawful act, was at fault because of his want of prevision of what was in plaintiff's mind. It is not claimed that there was such an emergency as deprived either of judgment. Undeniably plaintiff had the better knowledge of his peril. We need not consider whether he omitted extra precautions that in ordinary prudence were demanded by the known danger of his position. In the aspect of the facts least unfavorable to him, he shows at most a pure accident."

We have reached the conclusion that the judgments should be reversed, with costs, and the complaints dismissed, with costs.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Judgments unanimously reversed, with costs, and the complaints dismissed, with costs.