CATHERINE MERKLING, Respondent, Appellant, *v.* FORD MOTOR COMPANY and Another, Appellants, Impleaded with BENJAMIN FICK, Respondent.

Fourth Department, May 5, 1937.

*Leo C. Gabriel,* for the plaintiff-respondent-appellant.

*Harold J. Adams,* for the defendants-appellants.

*John J. Brown,* for the defendant-respondent.

EDGCOMB, J. This is a negligence action. An automobile owned and driven by the defendant Fick, in which plaintiff was riding as a passenger, collided with a car owned by the defendant Ford Motor Company and driven by the defendant Longanecker, at the intersection of Elk and Hamburg streets in the city of Buffalo. The Ford Motor Company and Longanecker have been held responsible for plaintiff's resulting injuries. Fick has been exculpated from the charge of negligence.

Without referring to the evidence in detail, we have reached the conclusion that the negligence of the defendants, and the freedom of the plaintiff from contributory negligence, were questions of fact for the jury. Errors in the charge, however, necessitate a reversal of the judgment against the Ford Company and Longanecker.

The jury was not permitted to pass upon the question of plaintiff's freedom from contributory negligence. It was told that, if it found Longanecker negligent, it should bring in a verdict against him, and against his master, the Ford Company. This was clearly error. As before noted, plaintiff was a passenger in Fick's car. She was bound to use such care and caution for her own safety as a reasonably careful and discreet person would have exercised under like circumstances. It cannot be said, as matter of law, that she was blameless. Her negligence was for the jury. (*Reilly* v. *Rawleigh,* 245 App. Div. 190; *Clark* v. *Traver,* 205 id. 206; affd., 237 N. Y. 544; *Joyce* v. *Brockett,* 205 App. Div. 770; affd., 237 N. Y. 561; *Klinczyk* v. *Lehigh Valley R. R. Co.,* 152 App. Div. 270.)

This mistake, however, is not available to the appellants because of the want of an exception, except as it may constitute an error of fact. (*Sherry* v. *Pennsylvania R. R. Co.,* 248 App. Div. 439, 441.)

There are, however, exceptions to other portions of the charge which squarely raise questions of law, and which, in our opinion, constitute reversible error.

Traffic at the intersection where this accident occurred was regulated by the usual control signals. Longanecker was driving southerly on Hamburg street. As he approached the intersection the signal for traffic on Hamburg street turned green, and the corresponding light for travelers on Elk street changed to red. Fick's car was in a funeral procession, and did not stop for the red light, but continued to cross Hamburg street in spite of the danger signal. Longanecker, having the green light, continued on his course. When Fick saw the situation he attempted to turn to his right, but the two cars collided near the southeast corner of the intersection.

An ordinance of the city of Buffalo was introduced in evidence which provided that no conveyance, except mail, fire, police and similar vehicles, " shall be driven through a procession, except with the permission or by order of a police officer." The ordinance is similar to the provisions of subdivision 2 of section 82 of the Vehicle and Traffic Law. Plaintiff claims, and the court charged, that this ordinance was applicable to the facts in this case, and that, if Longanecker drove through the procession, and there was any causal connection between such act on his part and the accident, the jury should take that fact into consideration in determining whether Longanecker and the Ford Company were negligent, because the violation of an ordinance was some evidence of negligence. The statute covering the same provisions contained in the ordinance was not mentioned. If one has any application to the facts in the case at bar, the other certainly has. The appealing defendants claim that neither the ordinance nor subdivision 2 of section 82 is applicable here in view of the provisions of section 84 of the Vehicle and Traffic Law, which, at the time of this accident, April 25, 1935, read, in part, as follows:

" Whenever traffic at any intersection is regulated by a traffic control signal, the following colors may be used and none other, and those colors herein authorized shall, when lighted, indicate as follows, except as provided in sections eighty-five and eighty-six:

" Red requires that traffic shall stop and remain standing.

" Green requires that traffic shall move."

The exceptions in sections 85 and 86, referred to in the above-quoted section of the Vehicle and Traffic Law, in no way relate to processions of any character. Neither of these two sections contains any statement or intimation that the duty to move on green or stop on red does not apply when a procession is approaching.

We are, therefore, confronted with a situation where there is an apparent conflict between the provisions of the ordinance and those set forth in section 84 of the Vehicle and Traffic Law, if we are to

give a literal construction to the two. The same may be said of the mandate specified in subdivision 2 of section 82 of the Vehicle and Traffic Law and those contained in section 84 of the same act. The two requirements are absolutely conflicting, if a procession happens to pass a street intersection where traffic is controlled by signal lights, and the red light is set against the procession, and the green is in favor of traffic on the other street. If each command is to be taken literally, one or the other must be disobeyed. Under these circumstances it was especially incumbent upon the trial court to reconcile, so far as possible, these two apparently contradictory requirements, and lay down the rule which should apply to the facts in the instant case.

Concededly the city of Buffalo had no authority to adopt any ordinance which would repeal, nullify or change the statute. Section 90 of the Vehicle and Traffic Law gives to the local authorities of a city the power to make and enforce " such additional reasonable ordinances, rules and regulations with respect to traffic as special local conditions may require," but subdivision 5 of the same section expressly prohibits such authorities from passing any act inconsistent with the statute itself, and declares that any such rule, if adopted, shall have no force or effect.

The Legislature, by the passage of the Vehicle and Traffic Law, intended to establish a uniform system of regulation and control of motor vehicles throughout the State. (*People* v. *President, etc., Village of Ossining*, 238 App. Div. 684, 688; affd., 264 N. Y. 574.)

Referring to section 84 of the Vehicle and Traffic Law, it will be noted that the meaning to be given the two colors, green and red, on a traffic control signal, is clearly defined, and the mandate to go on green, and stop on red, is positive and definite. No exceptions, other than those provided in the said sections 85 and 86, which in no way refer to a procession, are made. The very fact that two exclusions are noted is convincing evidence that no others were contemplated. *Expressio unius est exclusio alterius.* (*Aultman & Taylor Co.* v. *Syme*, 163 N. Y. 54, 57; *Matter of Engel*, 155 App. Div. 467, 469; *N. Y. C. & H. R. R. R. Co.* v. *Reusens*, 151 id. 458, 460; *Matter of Aylesworth* v. *Phœnix Cheese Co.*, 170 id. 34, 36; *Wallace* v. *Swinton*, 64 N. Y. 188, 194; *O'Esau* v. *Bliss Co.*, 188 App. Div. 385, 388.)

When Fick reached Hamburg street and the red light was against him, section 84 required him to stop and remain standing. The green light directed Longanecker to move on.

Does the ordinance, or subdivision 2 of section 82 of the Vehicle and Traffic Law, modify, alter or change the provisions of section

84, and give to a procession the right of way irrespective of a red light, which means " stop," and nullify the meaning of a green light?

Certainly one requirement must give way to the other, or else chaos and confusion will result. A solution must be found which will eliminate, rather than add to, the danger of accident and injury to travelers on the highway.

It is a cardinal rule of construction that all parts of a statute must be read and construed together, and should, so far as possible, be harmonized with each other, and with the general intent of the law-making body. (*People ex rel. Fifth Ave. Building Co.* v. *Williams*, 198 N. Y. 238, 247; *People* v. *McGloin*, 91 id. 241, 250; *Matter of New York & Brooklyn Bridge*, 72 id. 527, 529.)

The ordinance, as well as subdivision 2 of section 82 of the Vehicle and Traffic Law, simply provides that the ordinary vehicle shall not be driven through a procession, not merely a funeral procession but a procession of any kind. It will be noted that there is nothing in either the ordinance or the statute which expressly authorizes a procession to go through a red light. Can such privilege be inferred from the mere fact that a vehicle is forbidden to drive through it? I think not, in view of the positive mandate of section 84. A general expression, detached from the entire act, does not reveal the purpose of the statute as a whole. In construing the meaning and extent of subdivision 2 of section 82, as well as that of the ordinance, these provisions must be read in connection with all the commands of the Legislature embodied in the Vehicle and Traffic Law, which is a general, comprehensive act in relation to traffic on the highways of the State, and was designed to bring together in one statute all the provisions regulating and controlling the use of such highways. (*Madison Trust Co.* v. *Carnegie Trust Co.*, 215 N. Y. 475, 485; *Seligman* v. *Friedlander*, 199 id. 373, 376.)

All these statutes and regulations are founded on reason, and it is difficult to conceive of any sound argument which would justify the disregard of traffic signals simply because a car happened to be in a procession. The aim of the statute is to prevent and not to increase accidents. Neglect to heed a proper signal is the cause of many accidents, when traffic is heavy. Unless some good reason exists for such discrimination, it is difficult to see why the Legislature would thus nullify its mandate to stop when a red signal is displayed. I find no such reason. No haste is required when a procession is passing. No emergency exists. There may be a sentimental reason why those accompanying a corpse to the cemetery should not be stopped on their journey, but otherwise there would appear to be no good reason for the favor sought to be accorded them. It is not like the case of fire apparatus rushing to a fire.

There an emergency exists, and delay may mean the loss of life or property. Travelers on the highway are warned and protected by the sounding of a gong or siren whistle, and they are required by subdivision 6 of section 82 of the Vehicle and Traffic Law to immediately draw up to the curb and stop when they hear the warning of the oncoming fire apparatus.

The same may be said, but to a somewhat lesser degree, in regard to ambulances, police patrols and the other vehicles mentioned in subdivision 1 of section 12 of the ordinance and in subdivision 1 of section 82 of the Vehicle and Traffic Law, but it cannot be said of a procession, funeral or otherwise.

The provisions of subdivision 2 of section 82 of the Vehicle and Traffic Law and those of the ordinance can be reconciled with section 84 of the same act, and each can be given its proper effect. In the ordinance and in subdivision 2 of section 82 nothing is said about traffic signals. I think those provisions were intended to refer to processions at points where there are no traffic lights. There the procession may not be broken except by order of a police officer. But when the procession reaches an intersection where traffic is controlled by signals, the mandates of section 84 control, and the lights take the place of an officer, who concededly might permit the line to be broken and cut by other vehicles. This construction gives full force and effect to both sections of the act, and to the ordinance, and does violence to neither. It conforms to the underlying principle of statutory construction. It follows the apparent intention of the Legislature. Permission is given to a police officer to allow other vehicles to go through a procession. Why should not the same privilege be accorded where traffic is controlled by signals instead of a policeman? The signals take the place of the officer. Is there any reason for a different rule in the two cases? None is apparent.

I have reached the conclusion, therefore, that the Fick car should have stopped when the light turned red, and that Longanecker, with the green light in his favor, had the right to proceed across the intersection, if, at the time, it appeared reasonably safe so to do. He was justified in assuming, unless it would appear otherwise to a reasonably prudent person, that the ordinary vehicle, whether in a procession or not, would heed a signal which commanded it to stop. (*Crowley* v. *Fifth Avenue Coach Co.*, 249 App. Div. 408.)

Concededly a traveler on the highway cannot arbitrarily or capriciously insist upon his right of way, irrespective of traffic conditions, and excuse himself from the consequences of his act,

if conditions exist which would indicate to a reasonably prudent and careful person that it would be unsafe to proceed.

The rule which governed the movements of the two vehicles at this street intersection was not clearly stated to the jury. The instructions in that regard were inadequate and insufficient to enable them to reach an intelligent verdict. Under these circumstances, we feel that a new trial should, in the interest of justice, be had. (*Sherry* v. *Pennsylvania R. R. Co.*, 248 App. Div. 439; *Kroemer* v. *Raybestos Manhattan, Inc.*, 247 id. 105, 106.)

In view of the conclusion which we have reached, it becomes unnecessary to discuss the other assignments of error.

As a guide for the new trial which we feel should be had, it may not be out of place to say that any attempt to show an effort on the part of Longanecker to settle or compromise the case should not be permitted. Such an offer is no concession of liability. A party may with impunity attempt to buy his peace. (*Tennant* v. *Dudley*, 144 N. Y. 504; *Smith* v. *Satterlee*, 130 id. 677; *Union Bank* v. *Deshel*, 139 App. Div. 217; *Franklin* v. *Hoadley*, 115 id. 538.)

Neither would the plaintiff be entitled to show that Longanecker had been convicted of a violation of the city ordinance. Conviction for the non-observance of an ordinance is no proof of liability. (*Roach* v. *Yonkers Railroad Co.*, 242 App. Div. 195.) Nor can such a fact be received as affecting the credibility of the witness. (*Tryon* v. *Willbank*, 234 App. Div. 335, 339, 340, and cases there cited.)

Plaintiff has also taken an appeal from the judgment in favor of the defendant Fick. In her brief she points out no exception which would warrant a reversal of that judgment; she asks a reversal only in event that her judgment against Longanecker and the Ford Company is set aside. While she made no motion for a new trial under section 549 of the Civil Practice Act, she did appeal upon both the law and the facts. We may, therefore, review the facts. In view of the interpretation which we have given to the statute and to the ordinance, we think it may well be said that the verdict in Fick's favor is against the weight of the evidence, and that, in the interest of justice, the judgment as to him should be reversed and a new trial had. Especially is that so in view of the reversal of the judgment against the defendants Longanecker and the Ford Motor Company.

For the reasons stated, we think that the judgment against the defendants Longanecker and the Ford Motor Company, and the order denying their motion for a new trial, should be reversed on the law and the facts, and a new trial should be had, with costs to the appellants to abide the event, and that the judgment against

the plaintiff and in favor of the defendant Fick should be reversed on the facts, and a new trial should be had, with costs to the plaintiff-appellant to abide the event.

All concur. Present — SEARS, P. J., EDGCOMB, CROSBY, LEWIS and CUNNINGHAM, JJ.

Judgment and order as to defendants Longanecker and Ford Motor Company reversed on the law and facts and a new trial granted, with costs to appellants to abide the event; judgment against the plaintiff and in favor of defendant Fick reversed on the facts and new trial granted, with costs to the plaintiff-appellant to abide the event.