**Sophie REYNOLDS, Lewis Reynolds and Jordan Hassin, Plaintiffs,**

v.

**The UNITED STATES of America and John C. Shewark, Defendants.**

**Civ. No. 11878.**

United States District Court,
E. D. New York.

Jan. 3, 1955.

Aranow & Aranow, Brooklyn, N. Y., for plaintiffs, Joseph Aranow, Brooklyn, N. Y., of counsel.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., for the Eastern District of N. Y., Arthur D. Hickerson, Asst. U. S. Atty., Brooklyn, N. Y., for defendants.

BYERS, District Judge.

The plaintiffs sue to recover for personal injuries suffered by them on December 10, 1950 at about 6:30 p.m. as the result of a collision between the private automobile driven by Mr. Reynolds, of which all three were occupants and which was in collision with a U. S. Mail truck. This occurred in the intersection of 37th Avenue and 63rd Street in the Borough of Queens, the plaintiffs' car being southbound on 63rd Street, and the defendant's truck being westbound on 37th Avenue.

The case against Shewark was withdrawn at the opening of the trial.

There is agreement that the latter street is 40 feet wide, and the former is 28 feet wide; that there is no traffic light at any of the four corners, or stop sign; and that weather conditions did not contribute to the accident; also that both cars carried lights which were showing.

There is an expectable controversy as to the exact spot in the intersection at which the collision occurred, but the evidence as a whole would be consistent with placing it a little to the west of the north and south center line—say not to exceed four feet—and at about the same distance south of the center line of 63rd Street.

Since both drivers testify to observing the approach of the other vehicle at a sufficient distance away to enable him to stop sufficiently to permit of a safe passage ahead by the other car, the question comes down to this: Which one should have stopped, and was it negligent not to?

The three plaintiffs were their own fact witnesses; the defendant called Shewark, the driver of the truck, and Kemme, a disinterested person, as to the happening itself. In addition, there are photographs of the plaintiffs' damaged car which indicate that the left front side was so battered as to render repairs a matter of unjustifiable expense. That of course does not necessarily indicate which vehicle delivered the initial blow; the chances are that the two forces were practically simultaneous in impact, the momentum of defendant's truck being the greater by reason of its size and weight as loaded.

The remaining witnesses for the plaintiffs were Doctors LaRosa and Jacobson as to the injuries of Mr. and Mrs. Reynolds; Costas and Sepe as to photographs; and Reidy who removed the plaintiffs' car in damaged condition to his repair shop.

The defendant called Dr. Urbonk who examined Mr. and Mrs. Reynolds in October, 1952, to determine their then physical condition; and Klen who took the photograph Defendant's Ex. B, and Longman who described the injuries to the mail truck and the cost of repair ($53.27). The latter said that the damage started 8½ feet behind the right bumper, and that scrape marks extended 5½ feet; that the right side lower panels were slashed and there was damage to the right rear fender and to the gas tank.

The respective speeds before either vehicle reached the intersection were said to be about 25 M. P. H. and since there is no conflict on this subject, no finding is required, reliance being had in part on Kemme's disinterested testimony. Both he and Shewark agreed that each observed the vehicle of the

other as Kemme was moving east on 37th Avenue, and the mail truck west, at about the distance of one block or a little less, from 63rd Street; that they mutually changed their high lights to "low" according to Shewark, and to "parking" according to Kemme.

It is a reasonable inference that this change which was requisite to good driving by these drivers may have played some part in what followed, for although Reynolds saw the light of a car approaching from his left as he reached the intersection, it could be argued that if that light was then either "low" or "parking" the car would seem to be further away than in fact it was, because the bright lights would have more truly revealed the actual distance.

No such lowering of lights was practiced by Mr. Reynolds, the occasion therefor not having arisen, and since his (plaintiff's) car was observed by Shewark who said it was then 100 feet north of the corner on 63rd Street, he deemed that apparent position to indicate that he, Shewark, had sufficient time to pass safely in front and he proceeded to cross the intersection, with the results above stated.

Since Mr. Reynolds also saw the truck to his left (but not Kemme's car to his right), at a distance he judged to be 150 feet away, he too proceeded into the intersection, having first paused at the corner to read the street sign to confirm his whereabouts and that he was on his correct way to his destination (Queens Boulevard and Sunnyside Avenue).

It will be seen that each driver was aware of the presence and movement of the other car, but their respective estimates of its distance from the intersection, and therefore of the time available for safe clearance, were at best approximations.

Under these conditions, and since neither car was exceeding the 25 M. P. H. speed limit for safe driving, it seems to this court that the plaintiff's car had the right of way within the intent of Sec. 71, Traffic Regulations of the City of New York:

"Sec. 71: Non-controlled intersection. The driver of a vehicle approaching an intersection not controlled by traffic lights shall grant the right of way to the operator of the vehicle approaching from the right."

To the same effect see Sec. 82, subd. 4 of the Vehicle and Traffic Law of the State McK.Consol.Laws, c. 71, Laws 1930, c. 756, § 3, which is to the same effect throughout the State.

The cases make it clear of course that no driver is justified in proceeding into a situation of obvious peril, in reliance upon the priority so ordained; the rule is intended to operate so as to reduce the danger of collision at unguarded intersections, and does nothing more than declare that all things being equal, the car approaching on the left is to facilitate the other's opportunity to cross ahead. Ward v. Clark, 232 N. Y. 195, 133 N.E. 443; Shuman v. Hall, 246 N.Y. 51, 158 N.E. 16.

The evidence here is thought to show that all things were as equal as they ever can be, and that Shewark was negligent in not yielding the passing ahead privilege to the Reynolds' car; necessarily this means that Mr. Reynolds was not guilty of contributory negligence in attempting to cross 37th Avenue ahead of the mail truck.

Under the circumstances shown I am of the opinion that he exercised reasonable judgment although it proved to be misguided, in relying as he was entitled to, upon Shewark's willingness to obey the rules of the road.

The Government urges that Sec. 78 of the same Traffic Regulations which grant "preference" to "U. S. Mail vehicles carrying the United States mail" as was true here, must be deemed to off-set or cancel out the section above quoted.

Section 82, Subd. 1 of the Vehicle and Traffic Law contains the following:

"1. When in the performance of duty the following vehicles shall

have the right of way; United States Mail * * * *but this shall not relieve the driver or owner of any such vehicle from liability for injuries inflicted in consequence of the arbitrary or careless exercise of this right."* (Italics supplied.)

Even if the foregoing does not apply in this City, it clearly states a rule which must be acceptable in the general sense.

While Shewark may not have been shown to be arbitrary, he certainly was careless, i.e., he did not exercise due care, or he would have allowed the Reynolds' car to pass in front.

■ More than this, it is to be remembered that the collision occurred after dark, and to hold that Reynolds was required to yield to the "preference" declared in the Traffic Regulation of the City above quoted, he must have been apprised that the car whose lights he saw was indeed a mail truck; as to that the evidence teaches only that the lights on the truck were lowered, not that the vehicle itself was of such appearance in the dark as to proclaim its own right to priority in motor traffic.

The argument therefore fails.

One matter should be referred to for completeness, namely the lapse through inadvertence of Mr. Reynolds' driving license in September of 1950. The subject was not discussed in the briefs which is commendable on the part of the defendant.

■ He was not in the position of one who never had qualified for a license, and while technically was guilty of driving without one, he is not shown to have been called upon to meet such a charge under Sec. 70 of the Vehicle and Traffic Law; if he had been, the outcome would have had no bearing on the question of negligence under the showing here, for reasons on a parity with that which is convincingly stated in Phass v. MacClenathen, 274 App.Div. 535, 85 N.Y.S.2d 643.

It results that judgment must be ordered for the plaintiffs, with costs, according to the proof of the injuries sustained by them, and the property damage of the plaintiff Lewis Reynolds.

### As to Mrs. Sophie Reynolds

■ Mrs. Reynolds is shown to have suffered a cut over the right eye which was sutured on her arrival at St. John's Hospital, Long Island City; she was also bruised as to her right knee and ankle, and suffered additionally from pain in the lower chest wall. She was treated by her physician at her home and in his office, and by an orthopedic surgeon who prescribed an arch support, but whether she used it for any considerable time is not too clear. She was confined to her home for about two months after the accident, and paid some price for her experience in the form of nervous reaction. It is believed that a reasonably compensatory sum to her would be $1,000.

### As to Lewis Reynolds

■ Personal injuries were suffered in his left foot and knee, causing pain and limitation of use for a time. No medical advice was sought until six days after the accident, when Dr. LaRosa referred him to Dr. Jacobson who took x-rays which showed a chip fracture in the left knee joint, which was identifiable as late as November, 1954. There is now an arthritic lipping which is believed to be "secondary to" the accident. There is no permanent restriction but occasional pain in mounting stairs.

It is believed that the injuries sustained by Mr. Reynolds justify an award to him of $1,000.

Medical expenses paid for Mrs. Reynolds were $140.00 and for himself $40.00, or $180.00 in all.

### As to Jordan Hassin

The injuries claimed by this plaintiff caused him to seek three medical treatments for which the award of $25 is made. He did not establish any loss of earnings.

### As to Lewis Reynolds' property damage

The value of the plaintiff's car at the time of the accident was $1,000 and he sold it for $400 in its partially demolished state, thus the damage is computed at $600.

The judgment for the plaintiff Sophie Reynolds will be for $1,000 and for her husband Lewis Reynolds in the sum of $1,780, and for Jordan Hassin in the sum of $25.

The counterclaim of the defendant is dismissed on the merits.

If findings in addition to those herein stated are desired, they are to be settled.