Robert Mignery, Respondent, *v.* William Gabriel, Appellant.

Third Department, July 9, 1956.

*Paul C. Gouldin* for appellant.

*Robert E. Fischer* for respondent.

FOSTER, P. J. Defendant appeals from a $20,000 judgment in favor of the plaintiff in a negligence action, entered in the Broome County Clerk's Office after a trial in the Supreme Court before a jury, and from an order denying a motion for a new trial.

Plaintiff was hit and severely injured by a hit-and-run driver whose identity remains unknown. On the evening of July 17, 1954 plaintiff and his wife accompanied the defendant in his automobile to a place of entertainment known as Orchard Rest. A young lady, whose name is Rosemary Manwaring, was also with them. At Orchard Rest they met the plaintiff's brother, Adolph Mignery, and his fiance, Georgiana Boyce. Both parties stayed at Orchard Rest until approximately 1 o'clock of the morning of July 18. Apparently they indulged in nothing but innocent entertainment, such as square dances, etc., for there is no claim that alcohol played any part in the accident. Both parties left Orchard Rest at approximately the same time and intended to go to the plaintiff's house to have some coffee.

On the way back defendant was driving his car with Miss Manwaring on the front seat beside him. In the rear seat were the plaintiff and his wife, the plaintiff sitting directly behind the defendant. They were on their way back to the city of Binghamton on a State highway known as Route 12. The other car driven by plaintiff's brother Adolph, who had his fiance with him, travelled behind them for a time. At a point

near where the accident afterwards occurred Adolph passed the defendant's car, and as he did so he blinked his lights. This maneuver was taken by all as a signal to stop. Adolph drove his car off to the right hand side of the road and stopped ahead of the defendant's car. Then the defendant did the same thing and stopped his car approximately 15 or 16 feet behind the lead car.

Both cars had been traveling south toward the city of Binghamton and they stopped on the west side of the highway. At that point there were two lanes open to traffic; the third lane to the east was then in the process of reconstruction. The two lanes open for traffic had a combined width of about 24 feet. Everyone agrees that defendant's car, which was 6 feet 3¾ inches wide, was partially parked on the most westerly lane for a distance of about 3 feet, the rest of it being on the shoulder of the road adjacent to the guardrail. Those measurements, concerning which there is no dispute, left a clearance distance from the east side of the defendant's car of approximately 21 feet so far as the travelled portion of the highway is concerned. The distance from the edge of the macadam to the guardrail was 5 feet 7½ inches.

After the cars had stopped the defendant and the plaintiff got out of the defendant's car and walked ahead to the lead car. Plaintiff said on the trial that after the defendant had turned his motor off he said: "Come on. Let's see what he wants." When they reached Adolph's car they found that his fiance wanted to go somewhere else for coffee. After this question was settled they both started to walk back toward the defendant's car along the shoulder of the road until they reached it. Then they turned in front of it, the defendant going to the driver's door and the plaintiff going to the left rear door. The plaintiff had opened the left rear door and was about to enter when the hit-and-run driver came along. His car struck the defendant's car a glancing blow but with sufficient force to jar the occupants thereof, and then it struck both the plaintiff and the defendant. That plaintiff was severely injured is unquestioned, in fact no issue is raised as to his injuries or the amount of the verdict.

The place where the accident happened is on a long hill which descends toward the city of Binghamton. Defendant's car was parked on the inside of a curve. These facts the plaintiff stresses very strongly as indicating negligence on the part of the defendant to stop his car at such a dangerous place. An examination of the exhibits and the testimony however reveals that neither the grade of the hill was very steep nor

was the curve very sharp. Although a civil engineer was called as a witness by the plaintiff he did not testify to the angle of the curve nor is there any evidence in the record as to the angle of the curve and the grade of the hill except that which may be spelled out from the map that is plaintiff's Exhibit 9. This map shows the relative slightness of the curve. Moreover Adolph Mignery, who was called as a witness for his brother the plaintiff, testified that he waited for a straight stretch of highway before he passed the defendant's car. The engineer testified that the sight distance to the north, the direction from which the hit-and-run driver came, was approximately 1,000 feet. Thus, although we are required to view the facts in a light most favorable to the plaintiff, it is quite apparent that the dangerous aspect of the site where the accident happened was highly exaggerated.

As to the defendant's alleged negligence plaintiff relies very largely on a violation of section 58-a of the Vehicle and Traffic Law, which provides in substance that no motor vehicle shall be parked on any paved portion of a highway except in an emergency. The Trial Judge in his charge to the jury quoted the statute as a basis for a finding of negligence. Under the circumstances it seems a rather tenuous ground to support a finding of negligence against the defendant. His conduct of course must be judged by what happened immediately before he stopped his car. In the light of after knowledge it is easily found that no emergency existed but it is difficult to see how he could have known that at the time he stopped. The only knowledge he had then was that the driver of the lead car had signaled him to stop. Obviously he could not have then known whether such a signal indicated an emergency or not. The fact it turned out to be a trivial matter does not alter the principle or change the test of how his conduct must be judged.

But passing this and assuming negligence on the part of the defendant it seems to us that plaintiff cannot escape the imputation of contributory negligence in some degree. It is true that the night was dark but the lights of both cars were on. Not only that, the plaintiff himself testified that the defendant's automobile was parked about half on the paved portion of the highway. Thus if there was danger in the situation so far as the defendant's car being partially parked on the paved portion of the highway is concerned such danger was just as obvious to him as it was to the defendant. He testified that before he attempted to get into the defendant's car he was not sure whether he looked up the road or not but thought he did. The only other element which might tend to excuse his

own conduct was the fact that the defendant's car was parked on a curve. Of course this fact is greatly emphasized by plaintiff but as we have indicated before the curve in reality was very slight, and the sight distance so great, that it could not have played any decisive part in the accident. Plaintiff emphasized also his lack of familiarity with the road but it appears that he had been over it once or twice and the defendant had been over it five or six times. They were not very far apart so far as familiarity with the highway was concerned.

Cases are cited which are only helpful so far as general principles are concerned. There is no case precisely like the present one, or at least we have noted none. It is elementary that the defendant owed a duty of reasonable care to his passengers, both in driving and stopping his car. It is equally elementary that plaintiff had a duty to look after his own safety. There is not the slightest evidence that he made any protest over a situation now characterized as dangerous, indeed there is no indication that either he or the defendant regarded the situation as dangerous. That viewpoint did not arise until he had become the unfortunate victim of an accident. With the real culprit out of reach it is apparent that the jury's verdict was motivated by something other than the defendant's negligence and plaintiff's freedom from contributory negligence.

The judgment and order should be reversed and the complaint dismissed, without costs.

BERGAN, COON, ZELLER and GIBSON, JJ., concur.

Judgment and order reversed, on the law and facts, and complaint dismissed, without costs.