FRANK PONIATOWSKI, Respondent, *v.* CITY OF NEW YORK, Appellant.

Second Department, June 17, 1963.

*Leo A. Larkin, Corporation Counsel (Joseph A. Doran* and *Seymour B. Quel* of counsel), for appellant.

*Joseph Kelner* and *Harvey Weitz* for respondent.

HILL, J.   Plaintiff, a New York City policeman, was seriously injured when an unmarked police radio car, owned by the defendant city and in which he was a " recorder " passenger, collided with another vehicle while the police car, then being operated by a fellow police officer, was in pursuit of a third vehicle which, in violation of traffic regulations, had ignored a stop sign.

Plaintiff has obtained a substantial judgment against the city, his employer, based upon the jury's verdict in his favor.   The city appeals from the judgment on the principal ground that the plaintiff and the policeman who operated the police car at the time of the accident were fellow servants.   The city contends that plaintiff, as one of its employees, may not recover against it for an injury caused by the negligence of the operator who was a fellow servant of the plaintiff, while they were both engaged in the performance of their official police duties.

At common law, police officers were not regarded as municipal employees.   In *Matter of Evans* v. *Berry* (262 N. Y. 61, 67-68), the court said: " At common law cities were not liable for the torts of police officers.   Although appointed and paid by the city, such officers were not regarded as municipal agents or servants. When acting in the course of their duty, they were said to be performing a governmental function.   The city was immune from liability because the doctrine of *respondeat superior* was held to be inapplicable.   This was a rudimentary survival of the maxim ' The King can do no wrong.' "

The Legislature fully waived the State's immunity " from liability for the torts of its officers and employees " by enacting

section 12-a (now § 8) of the Court of Claims Act (L. 1929, ch. 467). In the same year it enacted section 282-g of the Highway Law (L. 1929, ch. 466), which is now section 50-a of the General Municipal Law, and which provides in part that: " Every city * * * shall be liable for the negligence of a person duly appointed * * * to operate a municipally owned vehicle within the state in the discharge of a statutory duty imposed upon the municipality, provided the appointee at the time of the accident or injury was acting in the discharge of his duties and within the scope of his employment. Every such appointee shall, for the purpose of this section, be deemed an employee of the municipality ".

There can be no doubt that for the purpose of determining the city's liability under the latter statute the operator of a police car must be deemed an employee of the city.

Paragraph 55.2 of chapter 3 of the Regulations of the New York City Police Department is entitled " Duties of Radio Motor Patrol Cars." It provides that " [T]he precinct commander shall assign qualified operators to each radio motor patrol car. He shall also assign recorders * * * [who] must be qualified operators."

Since plaintiff, as a recorder in the city's employ, must also be a " qualified operator ", he has the same status as his partner, the driver of the police car; and since the plaintiff was injured by a fellow servant, the common-law fellow-servant doctrine constitutes a complete defense (*Fay* v. *De Camp,* 257 N. Y. 407; *Riley* v. *Carlton,* 290 N. Y. 913; *Loughlin* v. *State of New York,* 105 N. Y. 159).

The fellow-servant doctrine was not invoked in *Wiseman* v. *City of New York* (13 A D 2d 796, affd. 10 N Y 2d 952), nor in *Ottmann* v. *Village of Rockville Centre* (273 N. Y. 205, 275 N. Y. 270), either on the original appeal (273 N. Y. 205) or upon its reargument (275 N. Y. 270). In the present case, however, the doctrine was specifically pleaded as an affirmative defense to the action.

Plaintiff relies heavily on the decision in *City of Albany* v. *Standard Acc. Ins. Co.* (7 N Y 2d 422) — a case similar to the one at bar. That case also involved two policemen in a police car; through the negligent driving of one of them, his fellow officer (the passenger) was injured. Although the court there was concerned with the liability of an insurer under a contract of insurance, the court stated that policemen were employees of the city.

We have also reviewed the other points raised by the city. In our opinion they are without merit.

The judgment should be reversed on the law, without costs, and the complaint dismissed on the law.

We have considered the facts and would affirm the judgment if we were not dismissing the complaint on the law.

The appeal from the intermediate order should be dismissed as academic.

BELDOCK, P. J. (dissenting). The fellow-servant doctrine does not apply to a case like the present, where by statute (Court of Claims Act, § 8; General Municipal Law, § 50-a) the city is concededly liable for the negligent operation of the police car by its driver, policeman Budris.

On exactly the same facts, i.e., where a policeman was injured or killed while he was a passenger in a police car operated by a fellow policeman on official business, the city was held liable in *Wiseman* v. *City of New York* (10 N Y 2d 952) and *Robinson* v. *City of Albany* (14 A D 2d 626).

In *City of Albany* v. *Standard Acc. Ins. Co.* (7 N Y 2d 422, 430) the court held specifically that it was not concerned with the liability of the city in the negligence action but solely with the liability of the insurance company under a contract of insurance. In the negligence action arising out of the very accident involved in *City of Albany* v. *Standard Acc. Ins. Co.* (*supra*), the city was held liable, even though plaintiff's intestate was a policeman passenger in the negligently operated police car (see *Robinson* v. *City of Albany, supra*). To the same effect, see *Ottman* v. *Village of Rockville Centre* (275 N. Y. 270, 273 N. Y. 205), where a fireman was killed when the fire truck on which he was riding was negligently operated by a fellow fireman. In that case the only reason for the village's exoneration from liability was that the statute imposing liability upon the village for the negligent operation of the fire truck became effective after the cause of action arose.

The judgment should be affirmed. The appeal from the intermediate order should be dismissed as academic.

HOPKINS, J. (dissenting). In my opinion, the verdict in plaintiff's favor should be set aside as against the weight of the evidence, and a new trial granted.

The plaintiff was riding in the police car on assignment to traffic patrol. It was his duty to act as " recorder." His companion, patrolman Budris, was the operator of the police car. The plaintiff's injury arose from a collision with a second automobile at an intersection while the plaintiff and Budris were pursuing a third automobile whose operator had committed a traffic violation. The issue of whether Budris was negligent

in the operation of the police car hinged on the sounding of its siren prior to the collision. Both Budris and one Lynch, a disinterested witness, testified that the siren had been audible. The plaintiff and the operator of the second automobile testified that the siren had not been sounded.

If the jury accepted the testimony that the siren was audible, then Budris was not negligent, and the verdict is against the weight of the evidence. The police car would then be entitled to the right of way at the intersection while the siren was sounded (New York City Traffic Regulations, §§ 2-B, 80; cf. *Bull* v. *Drew,* 286 App. Div. 1138; *County of Broome* v. *Binghamton Taxicab Co.,* 276 App. Div. 438; *Kirk* v. *Magee,* 1 A D 2d 452; *Garrett* v. *City of Schenectady,* 268 N. Y. 219). On the other hand, if the jury accepted the testimony that the siren was *not* audible, then the plaintiff was guilty of contributory negligence. In such event, as recorder, he should have pressed the button located on the dashboard in front of him in order to *activate* the siren; his failure to do so was a concomitant and substantial factor in the happening of the collision.

Although it is a question usually left to the jury's determination whether a passenger has been contributorily negligent (*Nelson* v. *Nygren,* 259 N. Y. 71, 76; *Merkling* v. *Ford Motor Co.,* 251 App. Div. 89, 91), this is not the usual case; nor is plaintiff the usual passenger. He was specifically assigned to the kind of duty whose performance necessarily required the pursuit in which he and his partner had engaged at the time of the accident. Once the pursuit began, it fell upon him as the recorder to activate the siren. As a matter of law, then, his failure in carrying out *his* duty constituted contributory negligence (cf. *Mignery* v. *Gabriel,* 2 A D 2d 218, affd. 3 N Y 2d 1001).

I do not believe, however, that the fellow-servant doctrine applies here. Under the modern view, that doctrine should not be extended beyond its limitations (cf. *Uravic* v. *Jarka Co.,* 282 U. S. 234, 241; *Crenshaw Bros. Produce Co.* v. *Harper,* 142 Fla. 27; Prosser, Torts [2d ed.], § 69, pp. 385–386; see, also, *Setzkorn* v. *City of Buffalo,* 219 App. Div. 416, affd. 246 N. Y. 605). The City of New York has not elected to bring its police officers under the Workmen's Compensation Law (Workmen's Compensation Law, § 3, subd. 1, group 19). We should not be astute to expand the fellow-servant rule to police officers, since: (1) the traditional concept of policemen and firemen is to consider them not as fellow employees of the city, but rather as agents of the State (*Miller* v. *City of Albany,* 158 Misc. 720, affd. 247 App. Div. 848); and (2) in the statute imposing liability upon the city (General Municipal Law, § 50-a) there is no exception whereby

the city is exempted from responsibility for the negligent acts of a fellow servant (*Robinson* v. *City of Albany,* 14 A D 2d 626).

I deem it unnecessary to pass upon the merits of the city's appeal from the intermediate order, in view of the respective positions taken by the majority and by Presiding Justice Beldock.

Ughetta and Brennan, JJ., concur with Hill, J.; Beldock, P. J., concurs with Hill, J., in dismissal of appeal from order, but dissents as to the reversal of the judgment and as to the dismissal of the complaint, and votes to affirm the judgment, in opinion. Hopkins, J., concurs with Hill, J., in reversal of the judgment but dissents as to the dismissal of the complaint, and votes to grant a new trial, in opinion.

Judgment reversed on the law, without costs, and complaint dismissed on the law. We have considered the facts and would affirm the judgment if we were not dismissing the complaint on the law. Appeal from intermediate order dismissed as academic.