**Mary JOFFE, Executrix of the Estate of Solomon Joffe, a/k/a Mayer Solomon Joffe, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 65 Civ. 2828.**

United States District Court
S. D. New York.

Feb. 26, 1969.

---

1. or stipulate, Admiralty Rule F.

Bernard Raphan, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty., Southern Dist. New York, for defendant, David L. Katsky, Brian J. Gallagher, Asst. U. S. Attys., of counsel.

LEVET, District Judge.

This action arose out of a motor vehicle collision which occurred on September 30, 1964 at the intersection of Huguenot and Anderson Streets in the City of New Rochelle, New York, between an automobile driven by Solomon Joffe ("Joffe") and a post office truck driven by Frank D. Keefer ("Keefer"), defendant's agent.

The suit was originally commenced by Joffe, who alleged that he suffered $400 in property damage to his automobile, $1,163.10 in hospital and medical expenses, and $50,000 in pain and suffering.

Joffe died from other causes on March 11, 1967 and subsequently his widow, Mary Joffe, as executrix of the decedent's estate, was substituted as plaintiff in this action. Trial, held on November 13, 1968, under Rule 42(b) of the Federal Rules of Civil Procedure, was directed solely to the issue of liability.

### PLAINTIFF'S CONTENTIONS

The plaintiff contends that Keefer turned left from Anderson Street onto Huguenot Street against a red light and struck Joffe's automobile which had proceeded along Huguenot Street through the intersection of Huguenot Street and Anderson Street. Plaintiff further contends that the traffic light on Huguenot Street was green in Joffe's favor, that Keefer, driving north on Anderson Street, failed to maintain a proper lookout while turning, and that Keefer failed to yield the right of way to Joffe.

### DEFENDANT'S CONTENTIONS

The defendant contends that Keefer was not negligent and that the accident resulted solely from the negligence of Joffe, who ran through a red light at the intersection of Huguenot and Anderson Streets, thereby striking the post office truck driven by Keefer, who had carefully made a left turn from Anderson Street onto Huguenot Street when the traffic light was in favor of Keefer.

The case was tried to the court without a jury.

After hearing the evidence submitted by the parties, examining the exhibits, the pleadings, the briefs and Proposed Findings of Fact and Conclusions of Law submitted by counsel, this court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Huguenot Street is a one-way, four-lane street, solely for westward traffic (12, 15; [1] Deft. Ex. A), with no parking permitted on either side (14, 161; Keefer Dep. p. 14); Anderson Street is a one-way, two-lane street, solely for northward traffic (Joffe Dep. p. 26; 71, 140) and terminating at Huguenot Street (Deft. Ex. A), at which intersection there are traffic lights on both sides of Huguenot Street (80, 157).

---

[1]. Unless otherwise identified, numbers in parenthesis refer to pages in the trial transcript.

All traffic going north on Anderson Street must turn left on Huguenot Street and proceed west (Deft. Ex. A).

2. On September 30, 1964, at approximately 2:30 P.M., Keefer, driver of defendant's post office truck, after stopping before a red light, drove out of Anderson Street on a green light from the left lane after signaling a left turn with his directional signal, looking to the right, and after seeing no automobiles proceeding along Huguenot Street. Keefer then began to turn left into Huguenot Street at a rate of five to eight miles per hour. He heard no horn before the impact (77, 78, 98, 99, 100, 163).

3. On September 30, 1964, at about 2:30 P.M., Joffe was proceeding west on Huguenot Street. "With his left eye" Joffe noticed the post office truck when Keefer was halfway in Anderson Street and when he himself was "a half block down." Assuming that the post office truck would stop for the light (25), Joffe drove through the red light intersection of Huguenot and Anderson Streets at a rate of 30 to 35 miles per hour. At a point on Huguenot Street in the extreme left lane, just past the intersection of Anderson Street, the right front fender of defendant's post office truck collided with the left rear fender of the Joffe car (121, 123, 124, 129–132, 134, 135, 155, 166, 167, 180).

4. After the impact, the defendant's truck came to rest against the south curb of Huguenot Street approximately 50 feet from the corner and the Joffe car was some distance down the street with its front end through a plate glass window (46).

5. The point of impact was the rear portion of the left rear door and the adjacent portion of the rear left fender of the Joffe car (see Pl. Exs. 12, 13), and the point of impact on the truck was the front right bumper and fender (Stipulation, 60). Keefer testified that he had not seen the Joffe car before the impact (48, 49), that he had not negotiated a full turn, and that he could not see the Joffe car because he was "blind on the right side" (44).

6. Although Joffe was negligent in passing the red light at the intersection of Huguenot Street, this was not the proximate cause of the accident and, hence, his negligence does not bar recovery.

7. Keefer, driver of the truck, was negligent in entering the intersection and in failing to see the Joffe car. He is, therefore, responsible for the rear end collision with Joffe's car which thereupon occurred.

## DISCUSSION
### THE TESTIMONY
#### PLAINTIFF'S CASE
##### THE JOFFE DEPOSITION

Joffe, in his deposition taken on September 7, 1966, did not remember if he stopped on Huguenot Street, a block away from Anderson Street (17, 18). He said that he was proceeding in the left lane at about 20 miles per hour (19) and that there were cars ahead of him (20). He stated that he saw the light for the first time "when he was halfway up the block" (21, 22). He testified that he saw the post office truck with his "left eye" when Keefer "was halfway in Anderson Avenue" [sic]. Keefer "was in the middle of the block" when Joffe first saw him (22).

Joffe testified that the impact occurred on the rear door and rear fender of his car; that the front of his car was then "past the intersection": and that his car was in the extreme left lane (23). Joffe also said he first saw the truck "about half a block down" approaching Huguenot Street (24). At that time Joffe "figured he [Keefer] was going to stop for the light" (25).

##### THE KEEFER DEPOSITION

Portions of the deposition of Keefer, read by plaintiff, were in part as follows:

Keefer testified that his right front fender came into contact with Joffe's rear left fender; that he himself had not negotiated a full turn yet; and that he could not see the car because he "was blind on the right side" (44).

Keefer said he examined his truck after the accident and observed that the right front fender was mashed in, that the bumper was torn, and that the left rear fender of Joffe's car was dented (45, 46). Counsel for the United States stipulated that the right front of the government vehicle struck the left rear of the Joffe vehicle (60). Keefer again asserted that he did not see the Joffe car before the accident (48, 49).

Keefer, called by plaintiff, testified in part as follows:

Keefer saw the Joffe car *after* the accident while it was resting in a plate glass window (65) with a portion of its nose protruding into a store known as Librett's (66, 68).

Keefer said he stopped on Anderson Street for the red light; that he was in the left lane of Anderson Street, which was a two-lane, one-way street (71, 72).

At the deposition on September 7, 1966, Keefer testified that his truck traveled 36–40 feet after the impact (75–77); at the trial he said 15 feet, but that actually he did not know (76–77).

Keefer testified that as he approached Huguenot Street in the left lane of Anderson Street the light was red. He stopped at the corner (98–99). When the light turned from red to green, he looked to the right, saw no cars, put on his directional signal and made a left hand turn into Huguenot Street at seven or eight miles per hour (77, 78, 99, 100). Then there was a heavy impact which he claimed threw him back to the right onto the floor of the truck as he felt the truck mounting the curb and rolling (101, 102). He heard no horn before the impact (102).

In his deposition he said the light was green when he was about 60 feet up Anderson Street (103), but at trial he insisted the light was red at that time (104).

## DEFENDANT'S CASE

Walter J. Fuller, an employee of a nearby service station on the day of the accident, testified for the defendant (116). He was a gas station attendant at the station located at the corner of Harrison Street and Huguenot Street (117), two blocks west of Anderson Street. At about 2:30 P.M. on September 30, 1964 he was at the point marked "WF–1" on Exhibit A (corner of Harrison and Huguenot Streets) (118–119). There was a traffic light at Harrison Street corner (121). He saw a car go through this light, then red (123, 124).

At first Fuller testified that he did not know whether the Anderson-Huguenot light was red or green (128), but after he examined his affidavit of May 1967 he testified that the light at Anderson and Huguenot Streets was red to Joffe (129–132) and that the Joffe car went through the red light (132). Then he heard a loud noise and the shattering of glass towards the intersection of Huguenot and Anderson Streets (134, 135).

Fuller saw the truck when it was coming out of Anderson Street (163). The Huguenot Street light facing him did not change from red while he was watching it (166, 167). He said he later worked on the repairs of the truck—straightened the bumper which was pushed into a wheel (169). The lights at Huguenot Street all worked together (172). When plaintiff's car passed Harrison Street, it was going 20–25 miles per hour. After the accident Fuller went to the scene (174). He said he did not take his eye off the traffic light (180).

Although Fuller conceded that he did not actually see the impact (138), when cross-examined by plaintiff's counsel he insisted that the light on Huguenot Street was red to Joffe (155) and said the traffic then was light (156). He said he was observing the Huguenot Street light on the left—on the Anderson Street side (159). Shortly thereafter, Fuller saw the post office truck up on the walk on Huguenot Street and the car he had seen before further in front of the post office truck (135).

I am inclined to believe that the testimony of Fuller in its essential parts is more credible than that of Joffe, plain-

tiff's intestate. I believe that the fact that Fuller's employer repaired the post office truck after the accident is of little significance as to any bias or interest.

## THE EDDY DEPOSITION

The defendant introduced a deposition by George Eddy, taken December 5, 1966.

George Eddy, an employee of Clark Equipment Company, testified that on September 30, 1964 at approximately 2:30 P.M. he saw a mail truck parked on the left side (of a side street, apparently Anderson Street) next to a cab on the corner. Two ladies were in a car in the middle of the street waiting for the light to change. The mail truck pulled up to the two ladies. Eddy saw the light ahead was red. Then the light turned green and the mail truck pulled out around the corner, made his turn to the left, and just about that time the sedan (i. e., the Joffe car) went by in front. The next thing he heard was a crunch; he heard no brakes; he went around; the mail truck was up against the left-hand curb on Huguenot Street and the (Joffe) car was protruding into a store front 50 or 75 yards further down the street.

There was damage to the right corner of the truck, the side of the (Joffe) car was also scratched, and the rear fender was dented. He estimated that the (Joffe) car was moving at a rate of 30-35 miles per hour. He said the right front corner bumper and the corner of the truck were bent and scratched.

After the accident the mail truck came to rest on the left-hand curb approximately 50 feet from the corner. The Joffe car stopped about 50–75 yards down the street with its front end through a plate glass window.

I believe the testimony of Eddy. No motive or interest to testify falsely appears.

 The police officer's report, Plaintiff's Exhibit 11 for identification, is inadmissible. Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517. It may be noted that (1) a deposition of Joffe was read by plaintiff; (2) a deposition of Eddy was introduced into evidence; and (3) the driver of defendant's truck, Keefer, testified. No necessity to admit this report was presented.

Although Keefer testified that before entering the intersection he looked to the right and saw no cars, there is no apparent reason why, if he looked, he should not have seen Joffe's car. Furthermore, the fact that his car collided with the rear of the Joffe car would indicate that the Joffe car passed through the intersection just before defendant's truck entered the intersection. As stated, Keefer testified that he was "blind on that side."

In short, I must conclude that:

(1) Plaintiff's intestate was negligent in passing through the red light on Huguenot Street at the intersection of Anderson Street;

(2) Defendant was negligent in entering Huguenot Street at Anderson Street in not seeing the Joffe car coming.

The problem is, in substance, whose negligence caused the accident? Was it defendant's negligence? Was it plaintiff's, or was it the concurring or continuing negligence of both?

## THE LAW
### THE VEHICLE AND TRAFFIC LAW

Section 1140 of the New York Vehicle and Traffic Law, McKinney's Consol. Laws, c. 71, as of the time of the accident was as follows:

"1140. Vehicle approaching or entering intersection

"(a) The driver of a vehicle approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway.

"(b) When two vehicles enter an intersection from different highways at approximately the same time the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

"(c) The right of way rules declared in subsections (a) and (b) are modified at through highways and otherwise as stated in this title. L. 1959, c. 775, eff. Oct. 1, 1960."

Section 1141 of the New York Vehicle and Traffic Law was as follows:

"§ 1141. Vehicle turning left at intersection

"The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver, having so yielded and having given a signal when and as required by this title, may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right of way to the vehicle making the left turn. L.1959, c. 775, eff. Oct. 1, 1960."

■ The provision that a defendant "shall grant the right of way at such intersection to any vehicle approaching from his right" does not mean that the privilege thus conferred is inflexible and absolute.

" * * * A right of way, like a burden of proof, will establish precedence when rights might otherwise be balanced. It helps us little when without it the balance would be unequal. A right of way might turn the scales if, when the plaintiff started to cross, the cars had been equidistant, or nearly so, from the point of the collision, due regard being had also for the speed of their approach. Even with the distances what they were, it was an element which the triers of the facts were to consider in their estimate of conduct. That, in the circumstances of this case, is, we think, the extent of its significance. The plaintiff was not to wait until there was no other car in sight. Such a rule would be unworkable in crowded cities. He was to wait until it was reasonably safe to start. Whether he started when

there was danger, was a question for the jury."

Ward v. Clark, 232 N.Y. 195, 198–199, 133 N.E. 443, 444 (1921), opinion by Cardozo, J. See Stevens v. Clark, 2 A.D.2d 791, 792, 153 N.Y.S.2d 803 (3rd Dept. 1956).

As stated by Judge Byers in Reynolds v. United States, 127 F.Supp. 373, 375 (E.D.N.Y.1955), a case involving New York law:

"The cases make it clear of course that no driver is justified in proceeding into a situation of obvious peril, in reliance upon the priority so ordained; the rule is intended to operate so as to reduce the danger of collision at unguarded intersections, and does nothing more than declare that all things being equal, the car approaching on the left is to facilitate the other's opportunity to cross ahead. Ward v. Clark, 232 N.Y. 195, 133 N.E. 443; Shuman v. Hall, 246 N.Y. 51, 158 N.E. 16."

Section 131 of the New York Decedent Estate Law, McKinney's Consol.Laws, c. 13, is as follows:

"§ 131. Trial and burden of proof of contributory negligence

"On the trial of an action to recover damages for causing death the contributory negligence of the person killed shall be a defense, to be pleaded and proven by the defendant. Added L.1920, c. 919, § 1, eff. April 15, 1921."

■ In a diversity action, New York law controls as to the effect of contributory negligence. Olsen v. New York Central R. Co., 232 F.Supp. 28 (S.D.N.Y.1964), aff'd 341 F.2d 233 (2nd Cir. 1965). However, Solomon Joffe, the original plaintiff, did not die at the time of the accident and no claim has been made that his death, some two and one-half years after the accident, was due to that cause. Hence, the statutory provision with respect to the burden of proving contributory negligence, as set forth in Section 131, is not applicable. Consequently, in this action for injuries sustained before death, the burden of prov-

ing freedom from contributory negligence is on plaintiff. Nilson v. Oppenheimer, 260 App.Div. 670, 23 N.Y.S.2d 621 (2nd Dept. 1940), aff'd 285 N.Y. 824, 35 N.E.2d 498 (1941).

■ Only in suits for death does the doctrine that the plaintiff is not held "to the high degree of proof required in a case where the injured party may take the stand and give his version of the happening of the accident" become effective. See Noseworthy v. City of New York, 298 N.Y. 76, 80 N.E.2d 744 (1948); Herbert v. W. H. Smith Paper Corporation, 243 App.Div. 260, 276 N.Y.S. 820 (3rd Dept. 1935). My attention has been called to no determination by which a lesser degree of proof has been applied to a case in which the person who suffered an accident died later from other causes.

In Hotine v. Monett, 137 N.Y.S.2d 727, 729 (Sup.Ct., Trial Term, Nassau Co., 1955), Mr. Justice Hogan wrote:

"While it is true that one turning across traffic is not obliged to wait until every one in view has passed, and that others also must show consideration and use like care not to hit the turning car, Anderson v. Burkardt, 275 N.Y. 281, 282, 9 N.E.2d 929, it is likewise true that the law imposes upon him the duty of extreme caution, Vehicle & Traffic Law, § 81, subd. 10, and the further duty to yield the right of way to any vehicle coming from the opposite direction which is so close to the intersection as to constitute an immediate hazard, Vehicle & Traffic Law, § 82–b. * * * *"

See also Walter v. State, 187 Misc. 1034, 65 N.Y.S.2d 378 (Ct.Cl.N.Y.1946).

■ The right of a motorist to assume that a traffic signal will be obeyed (Foley v. State, 265 App.Div. 682, 41 N.Y.S.2d 256 (4th Dept. 1943), aff'd 294 N.Y. 275, 62 N.E.2d 69 (1945); Crowley v. Fifth Ave. Coach Co., 249 App.Div. 408, 292 N.Y.S. 473 (1st Dept. 1937), aff'd 276 N.Y. 496, 12 N.E.2d 175 (1937)) does not continue after the person claiming the right has, or, in the exercise of reasonable care should have, become aware that another party to the accident is unable or does not intend to obey the signal. Merkling v. Ford Motor Co., 251 App.Div. 89, 296 N.Y.S. 393 (4th Dept. 1937); 4 N.Y. Jurisprudence, Automobiles, § 307, p. 292.

■■ It is elementary that in order that the negligence for which a plaintiff is responsible be contributory and, hence, bar recovery, it must be a proximate cause of the injury. 65A C.J.S. Negligence § 129, p. 92 and cases cited therein. I find, as already stated, that the decedent's negligence was not the proximate cause of this collision.

## CONCLUSIONS OF LAW

■ 1. This court has jurisdiction over this action pursuant to the United States Statutes and the Federal Tort Claims Act, 28 U.S.C. § 1346(b).

2. The issues to be decided in this case are governed by the laws of the State of New York.

3. Plaintiff has sustained her burden of proving by a fair preponderance of the credible evidence that the defendant was negligent both in entering the intersection of Huguenot and Anderson Streets, and in failing to see the Joffe car, thereby proximately causing the rear end collision which ensued.

4. Plaintiff has sustained her burden of proving by a fair preponderance of the credible evidence that Solomon Joffe was free from contributory negligence which proximately caused the rear end collision.

Plaintiff is, therefore, entitled to recover damages against the defendant in an amount to be determined. The court will place the trial of damages on its regular trial calendar, and the case will be called when reached. Entry of judgment will be deferred pending determination of damages.