VITO SERVIDO, Appellant, v SUPERINTENDENT OF INSURANCE, as Rehabilitator of Allcity Insurance Company, Respondent.

First Department, October 21, 1980

APPEARANCES OF COUNSEL

*Bertram Herman, P. C.,* for appellant.

*Isabella Natale* of counsel *(Leonard H. Minches,* attorney), for respondent.

## OPINION OF THE COURT

BLOOM, J.

By this appeal petitioner seeks to review a holding of Special Term denying him first-party benefits under the Comprehensive Automobile Insurance Reparations (no-fault) Act (Insurance Law, art 18, § 670 *et seq.).* On July 13, 1978 he was operating a 1966 Volkswagen in the vicinity of Merrick Road and Ocean Avenue in the Village of Lynbrook, New York. At the intersection were a number of occupied vehicles which were stopped for a red light. As a result of brake failure, petitioner was faced with an imminent rear-end collision with these occupied vehicles. To avoid this potentially disastrous happening, he steered the disabled vehicle into unoccupied vehicles, which were parked to the side of the road. He suffered injuries for which he was hospitalized for 27 days. Presumptively, the parked cars struck by him were damaged.

The Volkswagen was registered in the State of Alabama to one Victor Seville. It was an uninsured vehicle[1] and purportedly was turned over to petitioner by Seville at "the airport" approximately two months prior to the accident. It had not been reclaimed as of July 13, 1978. We are not informed whether any effort to reclaim it was made thereafter.

On the date of the accident Veronica Servido, the mother of petitioner, was the owner of a 1974 Chevrolet on which an automobile liability policy had been issued to her by Allcity Insurance Company. Inasmuch as the Volkswagen was uninsured, and petitioner carried no personal automobile liability insurance, he sought first-party no-fault benefits under his mother's policy, as a member of her household. Allcity was then (and presumptively still is) in rehabilitation. The Superintendent of Insurance (Superintendent), as rehabilitator of Allcity, after making one or more initial no-fault payments, denied that petitioner was covered under his mother's policy on the ground that he was "not an assured and that the

---

1. If the vehicle had been insured in Alabama or elsewhere outside this State by an insurer doing business in this State, the liability insurance policy would be construed to contain the no-fault provisions set forth in article 18 of the Insurance Law (Insurance Law, § 676). Since virtually all liability underwriters do business in this State, and, concededly, the car driven by petitioner had no no-fault coverage, it is a reasonable inference that the vehicle driven by petitioner was an uninsured vehicle.

vehicle which was involved in the accident was not insured by Allcity". This assertion that petitioner was not covered under his mother's policy was bottomed upon a regulation adopted by the Superintendent (11 NYCRR 65.12), and written into the Allcity policy, which in pertinent part reads as follows:

"*Exclusions*

"This coverage does not apply to personal injury sustained by * * *

"(b) any relative while occupying, or while a pedestrian through being struck by, any motor vehicle *owned by the relative* with respect to which the coverage required by the New York Comprehensive Automobile Insurance Reparations Act is not in effect". (Emphasis supplied.)

Accordingly, the matter was referred for hearing.

The major issue litigated before the Referee was the question of whether the exclusion authorized by the regulation adopted by the Superintendent and contained in the Allcity policy issued to Veronica Servido, although not contained in the no-fault statute, had the effect of stripping petitioner of the right to no-fault benefits, regardless of his status as a member of his mother's household. The Referee held that the regulation, and the exclusion thereby created, had such effect and recommended disallowance of petitioner's claim. Special Term confirmed the Referee's report noting that the "policy exclusion was written in conformity with the New York State Insurance Regulations promulgated by the Superintendent of Insurance and is valid and enforceable". We affirm.

Before entering upon a discussion of the applicable law, it would be appropriate to enumerate and define some of the terms necessarily involved.

Subdivision 5 of section 671 of the Insurance Law, in defining the owner of a vehicle ascribes to it the meaning set forth in section 128 of the Vehicle and Traffic Law. Section 128 includes within that term: "A person, other than a lien holder, having the property in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person and also includes any lessee or bailee of a motor vehicle or motorcycle having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days".

Section 672 (subd 1, par [b]) of the Insurance Law requires that every owner of a motor vehicle shall have included in his

automobile liability policy a provision for payment of first-party benefits to: "(b) the named insured and members of his household * * * for loss arising out of the use or operation of an uninsured motor vehicle".

Specified exclusions, none of which are here applicable, are permitted.

Subdivision 4 of section 672 provides that: "[I]nsurance policy forms for insurance to satisfy the requirements of subdivision 1 of this section shall be subject to approval * * * Minimum benefit standards for such policies and for self-insurers * * * shall be established by regulation pursuant to section twenty-one of this chapter".

Under subdivision (a) of section 21 of the Insurance Law the Superintendent is empowered "to prescribe, in writing, official regulations, not inconsistent with the provisions of this chapter" to effectuate the authority conferred upon him by law. Pursuant to this authority he adopted the regulation authorizing the no-fault exclusion here involved.

Against this backdrop, we come to a consideration of the contentions of the parties. Petitioner, by his own testimony, concedes that he had exclusive possession and control of the Volkswagen for approximately two months prior to the accident. Indeed, on cross-examination, he admitted somewhat reluctantly that he received a traffic summons in connection with the use of the vehicle on June 10, 1978, more than 30 days prior to the accident.

It would serve little purpose to engage in any extended discussion of the nature of bailments. For our purposes it is sufficient to note that it "is a bilateral relationship between parties concerning an item of personal property. In its ordinary legal signification, a bailment imports the delivery of personal property for a particular purpose on express or implied contract with the understanding that it shall be redelivered to the person leaving it, or kept until he reclaims it after fulfillment of the purpose for which it was delivered" (5 NY Jur [rev ed], Bailment, § 1). "A bailment is, of course, merely a special kind of contract; it describes a result which in many instances does not flow from the conscious promises of the parties made in a bargaining process but from what the law regards as a fair approximation of their expectations (see 9 Williston, Contracts [3d ed.], § 1030, n. 7, p. 879; § 1033, pp 884-885; § 1065, pp 1011-1023). Hence, in formulating a rule to determine the extent of the liability of the defendant, we must

concern ourselves with the realities of the transaction in which the parties engaged". *(Ellish v Airport Parking Co. of Amer.,* 42 AD2d 174, 176.) Nor is it material whether the bailment of the Volkswagen was a mutual benefit bailment or a gratuitous bailment. For our purposes it is sufficient that a bailment took place, as clearly it did. Since petitioner had exclusive possession of the Volkswagen as a bailee for a period of more than 30 days, he was, within the contemplation of section 128 of the Vehicle and Traffic Law, the "owner" thereof.

We come next to the question of the power of the Superintendent to adopt the exclusion here the subject of dispute. The Constitution of this State provides (art III, § 1) that "[t]he legislative power of this State shall be vested in the Senate and Assembly". Because of this provision it has been held repeatedly that the Legislature may not abdicate its constitutional powers and duties to other bodies or agencies *(Matter of Levine v Whalen,* 39 NY2d 510; *Matter of Mooney v Cohen,* 272 NY 33). There is, however, no constitutional limitation which precludes the Legislature from delegating to some agency or commission the power to make and enforce regulations the purpose of which is to administer the law as enacted by the Legislature, provided that reasonable standards and safeguards are set forth *(Noyes v Erie & Wyo. Farmers Co-op. Corp.,* 281 NY 187; *Matter of Small v Moss,* 279 NY 288; *McNulty v Chinlund,* 62 AD2d 682). "This does not mean * * * that a precise or specific formula must be furnished in a field where flexibility and the adaptation of the legislative policy to infinitely varying conditions constitute the essence of the program. The standards or guides need only be prescribed in so detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated, since necessity fixes a point beyond which it is unreasonable and impracticable to compel the Legislature to prescribe detailed rules" *(Matter of Levine v Whalen,* 39 NY2d 510, 515, *supra;* see, also, *Matter of City of Utica v Water Pollution Control Bd.,* 5 NY2d 164).

Petitioner does not contest the regulatory power of the Superintendent. He does, however, insist that by the adoption of an exclusion not contained in the statute, the Superintendent has transgressed constitutional limitations and is usurping legislative power.

We are aware that, in a context substantially different, it

has been held that the no-fault law is to be strictly construed even though when read together with the Workers' Compensation Law, such reading yields a harsh result obviously not intended by the Legislature *(Matter of Granger v Urda,* 44 NY2d 91; *Grello v Daszykowski,* 44 NY2d 894). Here, however, the no-fault law is but part of the comprehensive plan adopted by the Legislature to protect the public, at least in part, against the financially traumatic effects of automobile accidents *(Montgomery v Daniels,* 38 NY2d 41, 62). Although the separate parts of the plan were enacted at different times, and are contained in different chapters of the consolidated laws, they include the Motor Vehicle Financial Security Act (Vehicle and Traffic Law, art 6, § 310 *et seq.),* which precludes registration in this State of any motor vehicle unless the application for such registration is accompanied by proof of financial security in an amount prescribed by regulation of the Superintendent[2] (Vehicle and Traffic Law, § 311, subd 4; § 312, subd 1); and the Motor Vehicle Accident Indemnification Corporation Law (Insurance Law, art 17-A, § 600 *et seq.),* which provides limited indemnity for persons injured as a result of the ownership, maintenance or use of a motor vehicle in this State by a financially irresponsible motorist (Insurance Law, § 601, subd b; § 610, subd 1).

To give effect to the intent and purpose of the Legislature, it is the obligation of the Superintendent to read the separate statutes together so that they may be blended into a harmonious whole. The regulation here in question did no more than effect that objective. It required the resident owner of a motor vehicle seeking benefits under the no-fault law himself to comply with the Motor Vehicle Financial Security Act. Accordingly, we conclude that 11 NYCRR 65.12 was a proper exercise of the Superintendent's regulatory power and is, therefore, valid.

It is not inappropriate to note that the comprehensive plan of automobile insurance enacted by the Legislature was also intended to protect against property damage inflicted by a motor vehicle. Petitioner, by violating the obligation imposed upon him by law as the "owner", resident in this State, of a motor vehicle operated in this State, deprived the owners of those vehicles damaged by him in the very accident for which he here seeks benefits, of the financial security to which, by

---

2. Since December 1, 1979 the amount is fixed by statute

law, they were entitled. He is not entitled now to be rewarded by the happenstance that his mother owned a motor vehicle which was insured as required by law.

Additionally, the petitioner contends that the "disclaimer" of the Superintendent did not contain the specificity required by law (General Acc. Ins. Group v Cirucci, 46 NY2d 862). Here, however, the Superintendent did not disclaim liability under the policy issued by Allcity to Veronica Servido. Indeed, so far as the record indicates, he does not contest the binding effect of that policy. He asserts merely that petitioner is not one entitled to the coverage thereby provided. This denial of liability may scarcely be denominated a disclaimer. Certainly, the language employed in refusing to make further payment was sufficient to direct petitioner's attention to the precise reason for the refusal to pay benefits to him.

In these circumstances, the reasons asserted in the denial of the claim form sent to petitioner were most adequate to enable him to assess whether the Superintendent could successfully sustain the basis for his rejection of petitioner's claim (cf. General Acc. Ins. Group v Cirucci, 46 NY2d 862, 864, supra).

Accordingly, the order of the Supreme Court, New York County, (ASCH, J.), entered February 28, 1980, denying petitioner's claim for first-party no-fault benefits is affirmed, without costs.

SULLIVAN, J. (dissenting). On July 13, 1978, Vito Servido was injured as the result of the use and operation of a motor vehicle, as to which a policy of liability insurance in satisfaction of the requirements of this State's Motor Vehicle Financial Security Act (Vehicle and Traffic Law, art 6, § 310 et seq.) was not in effect. The vehicle, registered to one Victor Seville of Andalusia, Alabama, had been in Servido's possession for more than 30 days.

On the date of the accident Servido lived with his mother, the owner of an automobile covered under a policy of liability insurance issued by Allcity Insurance Company. As mandated by section 672 of the Insurance Law, this policy also provided no-fault coverage. Almost a year earlier, on August 31, 1977, at a Special Term of the Supreme Court of the State of New York, New York County, Allcity had been adjudged insolvent and the Superintendent of Insurance of the State of New York appointed rehabilitator. Allcity is still in rehabilitation.

Servido, who did not have an automobile liability insurance policy in his own name, applied, as a member of his mother's household,[1] for first-party benefits under the no-fault endorsement of her Allcity policy. On December 28, 1978, the Superintendent of Insurance denied Servido's claim, reasoning: "Applicant Vito Servido is not an assured and * * * the vehicle which was involved in the accident was not insured by Allcity."

On April 30, 1979, at a hearing held before a court-appointed Referee on the factual issues raised by the disallowance of the claim, the Superintendent, for the first time, contended that inasmuch as Servido had the use of Seville's vehicle for more than 30 days, he was an "owner"[2] of the vehicle within the statutory definition contained in section 128 of the Vehicle and Traffic Law,[3] and thereby excepted from no-fault coverage pursuant to exclusion (b) of the mandatory endorsement contained in 11 NYCRR 65.12, which denies coverage to: "[A]ny relative while occupying, or while a pedestrian through being struck by, any motor vehicle owned by the relative with respect to which the coverage required by the New York Comprehensive Automobile Insurance Reparations Act is not in effect". The Referee, while conceding that Servido qualified as a member of his mother's household under subdivision 8 of section 671 of the Insurance Law, found that "literal applications and interpretations must be judicially balanced with the policy and actual legislative intent of the no-fault insurance law", and that the law's intent is that "the injured owner of an uninsured motor vehicle is not entitled to any benefits." Consequently, he determined that a deviation from the literal construction of the statute was warranted to assure maintenance of "the legislative policy and intent of the no-fault insurance law."

The Referee's recommendation that Servido's claim be denied was subsequently confirmed, and this appeal taken. Because we believe that exclusion (b) was promulgated without

---

1. "'Member of his household' means a spouse, child or relative of the named insured who regularly resides in his household." (Insurance Law, § 671, subd 8.)

2. Under New York's no-fault automobile insurance law, "'Owner' shall have the meaning ascribed in section one hundred twenty-eight of the vehicle and traffic law." (Insurance Law, § 671, subd 5.)

3. "A person, other than a lien holder, having the property in or title to a vehicle. The term includes * * * any lessee or bailee of a motor vehicle or motorcycle having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days."

legislative authorization, and without any showing that the Legislature intended to exclude individuals in Servido's class, we would reverse.

Servido's claim as a first-party beneficiary and the Superintendent's invocation of exclusion (b) must·be considered against the background of several provisions of New York's no-fault automobile insurance law (Insurance Law, art 18—Comprehensive Automobile Insurance Reparations Act, § 670 *et seq.).* A "covered person" is defined as: "any pedestrian injured through the use or operation of, or any owner, operator or occupant of, a motor vehicle which has in effect the financial security required by articles six or eight of the vehicle and traffic law or which is referred to in subdivision two of section three hundred twenty-one of such law; *or any other person entitled to first party benefits."* (Insurance Law, § 671, subd 10; emphasis added.)

Pursuant to section 672 (subd 1, par [b]) of the Insurance Law, every policy of liability insurance satisfying the requirements of the Vehicle and Traffic Law shall provide for the payment of first-party benefits[4] to: *"the named insured and members of his household,* other than occupants of a motorcycle, for loss *arising out of the use or operation of an uninsured motor vehicle* and, outside of this state, of an insured motor vehicle". (Emphasis added.)

It is further provided in subdivision 4 of section 672 that: "Insurance policy forms for insurance to satisfy the requirements of subdivision one of this section shall be subject to approval pursuant to articles seven-A and eight of this chapter. Minimum benefit standards for such policies and for self-insurers, and rights of subrogation, examination and other such matters, shall be established by regulation pursuant to section twenty-one of this chapter."

Section 21 of the Insurance Law, to which subdivision 4 of section 672 refers, insofar as is relevant, provides:

"The superintendent shall have power to prescribe, in writing, official regulations, not inconsistent with the provisions of this chapter * * *

"(b) effectuating any power, given to him under the provi-

---

4. " 'First party benefits' means payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle, less". (Insurance Law, § 671, subd 2.)

sions of this chapter, to prescribe forms or otherwise to make regulations;

"(c) interpreting the provisions of this chapter * * *

"The superintendent may likewise, from time to time, withdraw, modify or amend any such regulation."

Pursuant to such authority the Superintendent of Insurance promulgated 11 NYCRR 65.12 which sets forth a mandatory personal injury protection endorsement prescribing the minimum first-party benefits provisions required in every automobile liability policy issued in compliance with the Vehicle and Traffic Law and New York's no-fault automobile insurance law. Section 65.12 of the regulations (11 NYCRR 65.12) further provides that if such automobile liability policy does not contain provisions affording first-party benefits at least equal to those set forth in the mandatory endorsement, the policy shall be construed as if the required provisions were embodied therein. It is the mandatory endorsement prescribed in section 65.12 to which Servido looks for first-party benefits.

Section 1 of the endorsement obligates the company: "[to] pay first-party benefits to reimburse for basic economic loss sustained by an *eligible injured person* on account of personal injuries caused by an accident arising out of the use or operation of a motor vehicle." (Emphasis added.)

The mandatory endorsement defines an eligible injured person as, among others, "[T]he named insured and any relative who sustains personal injury arising out of the use or operation of *any* motor vehicle." (11 NYCRR 65.12; emphasis added.) A relative is defined as "a spouse, child, or other person related to the named insured by blood, marriage, or adoption * * * *who regularly resides in the insured's household,* including any such person who regularly resides in the household, but is temporarily living elsewhere". (11 NYCRR 65.12; emphasis added.)

Thus, in providing first-party benefits to a member of an insured's household, section 65.12 is faithful to section 672 (subd 1, par [b]) of the Insurance Law. Under both the statute and the mandatory endorsement Servido, as the Referee noted, qualifies as a member of an insured's household. Furthermore, since the mandatory endorsement covers personal injury "arising out of the use or operation of any motor vehicle", he is, in the absence of an exclusion or noncompliance with a condition of the endorsement (and none is claimed), eligible for first-party benefits.

As already noted, the Superintendent relies upon exclusion (b) of the mandatory endorsement. A valid rule promulgated by an administrative agency has the force and effect of law. (See *Darweger v Staats,* 267 NY 290, 306; 2 NY Jur 2d, Administrative Law, § 101.) In promulgating a regulation under the authorization granted him pursuant to statute, however, an administrator must act within the framework of the policy which the Legislature has established and may not assume authority beyond that delegated to him by the enabling legislation. *(Matter of Picone v Commissioner of Licenses,* 241 NY 157; 2 NY Jur 2d, Administrative Law, §§ 102, 103.) Thus, the legislative powers of agencies must be taken as they are found. (See *Matter of Knapp v Syracuse Univ.,* 308 NY 274.) In promulgating standards for insurance policy forms pursuant to subdivision 4 of section 672 of the Insurance Law, the Superintendent of Insurance may establish minimum first-party benefits standards greater than those provided by statute, but in no event, may they be less. *(Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451.) "[W]here the rules or regulations of an administrative agency are in conflict with the provisions of the statute or inconsistent with its design and purpose, they are to be held invalid." *(Connolly v O'Malley,* 17 AD2d 411, 417.)

The Legislature was quite specific in listing those persons whom an insurer "may exclude" from first-party benefits coverage. Subdivision 2 of section 672 of the Insurance Law provides:

"An insurer may exclude from coverage required by subdivision one a person who (a) intentionally causes his own injury; (b) is injured as a result of operating a motor vehicle while in an intoxicated condition or while his ability to operate such vehicle is impaired by the use of a drug (within the meaning of section eleven hundred ninety-two of the vehicle and traffic law); or (c) is injured while he is:

"(i) committing an act which would constitute a felony, or seeking to avoid lawful apprehension or arrest by a law enforcement officer, or

"(ii) operating a motor vehicle in a race or speed test, or

"(iii) operating or occupying a motor vehicle known to him to be stolen."

These legislatively authorized exclusions are incorporated into the mandatory endorsement but, it should be noted that the

statute does not require exclusion. Similarly, under the mandatory endorsement set forth in 11 NYCRR 65.12, an insurer may, at its option, delete the exclusion and cover the risk.

With the exception of those designated as (a) and (b) the other exclusions contained in the mandatory endorsement all have a statutory basis. Exclusion (a) is actually a corollary of exclusion (b), not at issue here, which bars coverage to the named insured or a relative who, while an occupant of, is involved in an accident with, or while a pedestrian, is struck by, any motor vehicle owned by the named insured for which no-fault coverage is not in effect.

The mandatory endorsement's exclusion for the occupants of a motorcycle has its basis in section 672 (subd 1, pars [a], [b], [c]; subd 6) of the Insurance Law. The net effect of the exclusion which excepts first-party benefits coverage when the named insured or relative is injured in New York State while occupying, or, as a pedestrian being struck by, a motor vehicle other than the insured vehicle, as to which no-fault insurance is in effect,[5] is, in fact, no exclusion from coverage at all, because in such case, first-party benefits are provided by the no-fault insurance on the "other motor vehicle."[6] Of similar nonexclusionary effect is the exclusion for occupants of a bus or school bus.[7]

The Legislature has delegated specific administrative authority to the Superintendent of Insurance to implement article 18 of the Insurance Law and none of the powers

---

5. Exclusion (c) of the mandatory endorsement provides, "the named insured or relative while occupying, or while a pedestrian through being struck by, a motor vehicle in New York State, other than the insured motor vehicle, with respect to which the coverage required by the New York Comprehensive Automobile Insurance Reparations Act is in effect; however, this exclusion does not apply to personal injury sustained in New York State by the named insured or relative while occupying a bus or school bus, as defined in sections 104 and 142 of the New York Vehicle and Traffic Law, unless that person is the operator, an owner, or an employee of the owner or operator, of such bus or school bus." (11 NYCRR 65.12.)

6. The mandatory endorsement defines an eligible insured person as, among others, "any other person who sustains personal injury arising out of the use or operation of the insured motor vehicle in the State of New York while not occupying another motor vehicle." (11 NYCRR 65.12.)

7. Exclusion (d) of the mandatory endorsement provides, "Any person in New York State while occupying the insured motor vehicle which is a bus or school bus, as defined in sections 104 and 142 of the New York Vehicle and Traffic Law, but only if such person is a named insured or relative under any other policy providing the coverage required by the New York Comprehensive Automobile Insurance Reparations Act; however, this exclusion does not apply to the operator, an owner, or an employee of the owner or operator, of such bus or school bus".

provided could be construed as granting to the Superintendent the power to exclude from first-party benefits a member of an insured's household because the vehicle involved, which he owns, is not insured to satisfy this State's compulsory automobile insurance law and its concomitant no-fault provisions. That grant of power includes authorization to approve a family deductible not greater than $200 (Insurance Law, § 672, subd 3); to prescribe, as already noted, insurance policy forms for the implementation of first-party benefits coverage (Insurance Law, § 672, subd 4); and under prescribed circumstances to approve the underwriting of coverage for the items of basic economic loss specified in section 671 (subd 1, par [a]) of the Insurance Law by an authorized accident and health insurer or medical expense or medical or dental expense indemnity corporation or hospital service corporation (Insurance Law, § 672, subd 7). The Superintendent must promulgate or approve mandatory arbitration procedures for the resolution of controverted claims by an insurer which has paid first-party benefits against the insurer of a party alleged to be at fault and disputes between insurers over responsibility for the payment of first-party benefits (Insurance Law, § 674, subd 2); he must promulgate or approve procedures for the arbitration of disputed first-party benefit claims against the insurer and simplified procedures for review of an arbitrator's award by a master arbitrator (Insurance Law, § 675, subd 2); he must approve the rates, rating plans, rating rules and rate manuals filed by insurers for use in connection with the writing of first-party benefits insurance, file reports at stated times with the Governor and the Legislature showing, *inter alia,* the rates for coverage providing first-party benefits, bodily injury liability and medical payments, and prescribe regulations by which insurers providing no-fault insurance shall refund or credit the purchasers of such policies their share of premium savings (Insurance Law, § 677); and he must promulgate rules and regulations implementing and co-ordinating the provisions of article 18 of the Insurance Law and the Workers' Compensation Law with respect to charges for professional health services incurred on account of personal injury arising out of the use or operation of a motor vehicle (Insurance Law, § 678).

Since, as noted previously, the power to exclude was delegated to the Superintendent by an enumeration of specified exclusions, the Superintendent may not, in the absence of a general grant of power to exclude other classes, exclude any

class but those enumerated. A universal principle in the interpretation of statutes is that the specific mention of one thing implies the exclusion of other things. *Expressio unius est exclusio alterius* (McKinney's Cons Laws of NY, Book 1, Statutes, § 240; *Strauch v Town of Oyster Bay,* 263 App Div 833; *Merkling v Ford Motor Co.,* 251 App Div 89; *Matter of Deth v Castimore,* 245 App Div 156). Unlike subdivision 4 of section 312 of the Vehicle and Traffic Law, which authorizes the Commissioner of Motor Vehicles "to promulgate reasonable regulations to provide effective administration and enforcement of the provisions" of this State's compulsory automobile insurance law, no such broad mandate is given to the Superintendent of Insurance under the no-fault statute. Certainly, in granting the Superintendent the authority under no-fault legislation to perform such almost routine functions as establishing rates and preparing forms, powers which have traditionally been within the realm of administrative agencies, the Legislature could also have delegated to the Superintendent the discretionary power to exclude classes other than those statutorily enumerated. It did not.

While subdivision 4 of section 672 of the Insurance Law also provides for the establishment by regulation of "rights of subrogation, examination and other such matters", it is evident that "other such matters" relates to examination, and provides statutory authorization for no more than the establishment of regulations relating to claim processing. In no way may the section be read as authorization to exclude by regulation members of a class who otherwise qualify as first-party beneficiaries. Nor may the authorization provided under subdivision (c) of section 21 of the Insurance Law to prescribe regulations "interpreting the provisions of this chapter" be construed as conferring the power to promulgate exclusions other than those specified in section 672 of the Insurance Law, since the directive is preceded by the warning that such regulations not be "inconsistent with the provisions of this chapter". The statute is clear and unambiguous, and its plain language cannot be changed by an administrative ruling. *(McGoldrick v Family Fin. Corp.,* 287 NY 535, 539.)

Not without significance on this issue is a 1977 amendment to the no-fault insurance law which excepted "occupants of a motorcycle" from first-party benefits eligibility. (Insurance Law, § 672, subd 1, pars [a], [b], [c], as amd by L 1977, ch 892, § 9, eff Dec. 1, 1977.) Since its passage in 1973, section 671

(subd 6, par [b]) of the Insurance Law has excluded motorcycles from the definition of a motor vehicle under no-fault legislation. Prior to the enactment of the 1977 amendment excepting "occupants of a motorcycle" from coverage, however, section 672 (subd 1, par [a]) of the Insurance Law had mandated "the payment of first party benefits to * * * persons, other than occupants of another motor vehicle, for loss arising out of the use or operation in this state of" a motor vehicle as to which no-fault insurance was in effect.[8] Thus, since a motorcyclist was not the occupant of "another motor vehicle", he was held to be entitled, in the same manner as a pedestrian, to first-party benefits from the insurer of the motor vehicle with which he collided. (See *Perkins v Merchants Mut. Ins. Co.,* 82 Misc 2d 157, affd 50 AD2d 1070, affd 41 NY2d 394; also *Brown v Crawford,* 84 Misc 2d 642.)

The obvious inequity in permitting motorcyclists who, because of the prohibitive cost, were not required to purchase first-party benefits coverage (see statement by David S. Kaplan, president of National Motorcycle Plan, Inc., before Joint Legislative Committee on Insurance Rates, Regulation and Recodification of the Insurance Law, NY Legis Doc, 1972, No. 21, p 17), to "enjoy the benefit of no-fault at no cost" (McKinney's Session Laws of NY, 1977, p 2448, Executive Department Memorandum) spurred the Legislature to amend the law to exclude motorcyclists. Confronted with the problem of a class of motor vehicle owners[9] receiving first-party benefits without contributing to the cost of such protection, the Superintendent did not promulgate a regulation excluding motorcyclists, but rather had to obtain his power to exclude them from the amendment to section 672 of the Insurance Law. Just as in the case of the motorcycle exclusion, statutory authorization is required to exclude persons in Servido's class from coverage, even though the intent of the Legislature in enacting the no-fault law might well have been, as the Referee found, to exclude such persons.

As commendable as are the Superintendent's efforts to exclude from first-party benefits eligibility those automobile

---

8. Similarly, 11 NYCRR 65.2, the predecessor regulation to section 65.12 (eff Dec. 1, 1977), defined an eligible injured person as, among others, "any person who sustains a personal injury arising out of the use or operation of the insured motor vehicle while not *occupying another motor vehicle*".

9. Under the Motor Vehicle Financial Security Act, a motorcycle is a motor vehicle. (Vehicle and Traffic Law, § 311.)

owners who are not directly contributing to the no-fault insurance' system, the enabling statute must be applied as written and not as the courts might believe it should have been written. *(Matter of Fullerton v General Motors Corp.,* 46 AD2d 251.) The remedy for this apparent loophole in the no-fault law of a noncontributing motor vehicle owner qualifying derivatively for first-party benefits as a member of an insured's household would seem to be a matter for legislative action and not administrative fiat.

Concededly, there is an aura of unconscionability about the payment of first-party benefits to the owner of an uninsured motor vehicle for injuries sustained in the operation of that vehicle, even though the uninsured owner qualifies as a member of an insured's household. Other factors, however, which would serve to mitigate any inherent inequities should not be overlooked. Servido's mother purchased insurance which, as required by statute, provided for the payment of first-party benefits to members of her household for loss arising out of the use or operation of an uninsured motor vehicle. (Insurance Law, § 672, subd 1, par [b].) This insurance was provided under a family automobile combination policy which was undoubtedly written in contemplation of the existence of family members and for which an appropriate premium was charged. Furthermore, a sanction other than denial of first-party benefits is available for failure to comply with the provisions of New York's compulsory automobile insurance law. By operating an uninsured motor vehicle, Servido is subject to revocation of the "privilege to operate any motor vehicle in this state and the privilege of the operation within this state of any motor vehicle owned by him" for at least one year. (Vehicle and Traffic Law, § 318, subd 4, pars [a], [b].) In addition, any person who operates either an unregistered vehicle or a vehicle registered in New York which is not insured in compliance with this State's Motor Vehicle Financial Security Act is in violation of section 319 of the Vehicle and Traffic Law, for which he is subject to punishment, by imposition of a fine of not less than $100 or more than $1,000 or imprisonment for not more than one year, or both.

In light of the foregoing, we do not believe it is necessary to reach Servido's other contention, namely, that by not asserting exclusion (b) initially as the basis of disclaimer, the Superintendent was estopped from relying upon it later.

Accordingly, the order, Supreme Court, New York County

(Asch, J.), entered February 28, 1980 which, *inter alia,* denied the motion to disaffirm the Referee's report, should be reversed, the motion granted and the matter remanded for further proceedings not inconsistent herewith.

Fein, J. P., and Sandler, J., concur with Bloom, J.; Sullivan and Carro, JJ., dissent in an opinion by Sullivan, J.

Order, Supreme Court, New York County, entered on February 28, 1980, affirmed, without costs and without disbursements.