OPINION OF THE COURT
Edward J. Greenfield, J.
Respondent’s motion to reargue the prior determination of this court (Sutton, J.) in this CPLR article 78 proceeding in which petitioners sought to vacate and annul, in whole or in part, regulation 27-A (11 NYCRR Part 185) of the New York State Insurance Department is granted. This court accepts jurisdiction over this motion pursuant to CPLR 9002.
The trustee petitioners are trustees of a trust established by agreement between the trustees and the New York State Bankers Association. The trust, inter alia, provides and maintains group credit life and group credit accident *601 and health insurance policies (cumulatively credit insurance) issued by duly licensed insurance carriers for the benefit of the members of the association which want to avail themselves of the program and qualify under the terms of the trust agreement. The trustees currently offer six different types of credit insurance to participating banks: life insurance (1) on installment loans; (2) on real estate mortgage loans; (3) on revolving credit/credit card loans; and (4) on time notes; and accident and health insurance; (5) on installment loans; and (6) on real estate mortgage loans. Credit insurance is made available to the participating banks through master policies which have been issued to the trustees as policyholder. Participating banks provide credit insurance to some of their loan customers under the master policies issued to the trustees. They impose premiums and other related charges (premiums) on their loan customers and, as a service, permit them to borrow amounts sufficient to pay the premium and charge interest or finance charges on these amounts.
Under the master policies any surplus or dividend is distributed by the issuing insurance carriers to the trustees, who allocate the dividends among the participating banks. No portion of the dividends are distributed to the debtor/insureds or used to reduce their debt.
Many of the loans made by participating banks are for periods in excess of three years and, therefore, credit insurance is often provided for periods in excess of three years.
On March 3, 1980, following public hearings, the superintendent promulgated regulation 27-A, which provides, inter alia, that effective June 1, 1980 or the first policy anniversary date thereafter, payment of dividends to the trustees or participating banks is prohibited. Any dividends must either be allocated to borrowers or be used to reduce future premiums (11 NYCRR 185.10). Section 185.7 of regulation 27-A (11 NYCRR 185.7 [i]) prohibits the collection of any premium for a period of insurance in excess of one year (or, with the approval of the superintendent in excess of three years); requires creditors to make insurance available to borrowers for the full term of the loan, but forbids the imposition of additional underwriting *602 charges for reissuance or renewal of a policy after the expiration of the initial period; prohibits the creditor from charging the debtor an amount greater than that charged by the insurer; and requires the creditor to provide coverage to the debtor for a period of two months following the debtor’s failure to pay his premium.
Petitioners, trustees of the New York State Bankers Group Creditors Life Insurance Plan and two participating banks, seek judgment annulling those portions of regulation 27-A of the Department of Insurance (11 NYCRR 185.0 et seq.) which require the allocation of dividends on group credit life insurance policies to individual borrowers (11 NYCRR 185.10) and which prohibit the financing of insurance premiums (11 NYCRR 185.7 [f]).
Upon the original submission before Justice Sutton, petitioners also stated that since the promulgation of these regulations by respondent superintendent, the superintendent had withdrawn his approval previously given to the insurance policy forms. Petitioners argued that the superintendent had failed to follow the procedure set forth in section 141 of the Insurance Law which allows him to withdraw his approval only after notice and a hearing given to the insurer. Mr. Justice Sutton rejected the superintendent’s position that the public hearings had on the proposed new regulation 27-A satisfied the requirements of section 141 of the Insurance Law and stayed the provisions of regulation 27-A until hearings on withdrawal of approval were held and determinations made. Petitioners join in the application to reargue and while they believe that the court properly decided the issue concerning section 141 they ask that the court go beyond that issue and deal with the substantive issues of the validity of the newly promulgated regulations.
Respondent argues that section 141 of the Insurance Law does not apply under these facts and circumstances. First it is asserted that neither section 204 (subd 1, par [c]) of the Insurance Law, which authorizes duly licensed life insurance companies to issue group life insurance policies in connection with credit transactions, and section 154 (subd 7, par [a]) of the Insurance Law which requires that insurers file with the superintendent their credit insur *603 anee policy forms for approval and paragraph (b) which authorizes the superintendent to prescribe official regulations, contains any reference to section 141. Therefore, it is urged that the superintendent, by performing his quasi-legislative duties in promulgating the 1980 regulation 27-A repealed the former (1963) regulation 27-A. The repeal of the former regulation 27-A is tantamount to a repeal of any prior approvals of credit insurance policy forms and not a withdrawal of an approval formerly granted.
The power granted by the Legislature to the superintendent to promulgate official regulations under section 154 (subd 7, par [b]) of the Insurance Law by its nature includes the power to modify or repeal prior regulations. Any construction to the contrary would result in a hodgepodge of regulations which would be unduly lengthy and complicated and which might contradict one another. It is clear that once filed with the Secretary of State, regulations have the force and effect of law (NY Const, art IV, § 8; see People v Cull, 26 Misc 2d 668, affd 10 NY2d 123). “[Tjhere can be little doubt that, as employed in the constitutional provision [the term ‘rule or regulation’] embraces any kind of legislative or quasi-legislative norm or prescription which establishes a pattern or course of conduct for the future.” (People v Cull, 10 NY2d 123, 126.)
Thus, it is apparent that the forms approved under former regulation 27-A, as of the effective date of the newly promulgated regulation 27-A, failed to comply with the new regulation having the effect of a new law. This is not the same as a withdrawal of approval of a submitted form under existing regulation where the superintendent unilaterally determines that the form is contrary to legal requirements, is unfair, deceptive, etc. In such a case, the insurance carrier in issuing new policies, has the right to rely upon the superintendent’s prior approval and due process dictates that notice to the insurer and a hearing be afforded prior to any withdrawal.
The public hearings and filing of the newly promulgated regulation fulfill the due process requirement and separate notice and hearings to each insurer are not necessary as to the forms.
*604 Moreover, it is argued and this court agrees, that even were notice and hearings required under these circumstances pursuant to section 141 of the Insurance Law, the section specifically provides that “notice and hearing [be] given to the insurer which submitted such form for approval” (emphasis supplied). Thus, it is clear that the provision does not apply to petitioners, which are not insurers and are not entitled to this relief since petitioners have not established a clear legal right to a hearing (Matter of Association of Surrogates & Supreme Ct. Reporters within City of N. Y. v Bartlett, 40 NY2d 571, 574). While petitioners have an interest in the regulations, they are not directly subject to the supervisory powers of the superintendent (see, e.g., Insurance Law, art 1, § 5 et seq.) '.
11 NYCRR 185.10 provides that:
“(d) Any dividends or retrospective rate credit or retrospective rate refund[1] may be applied to reduce the creditor’s cash contribution, if any. Any excess thereof must be distributed in one of the following ways:
“(1) Refunded to the debtors”, or
“(2) Applied to reduce future premiums”, or
“(3) Set aside as a special fund to be held by the insurer for the purpose of reducing future premiums and to be applied in determining any new experience adjusted rate”.
Petitioners contend that sound actuarial planning dictates that insurance companies set premiums at rates which exceed anticipated losses and expenses. The resulting surplus is then refunded as dividends to the policyholders. In the case of group credit insurance, where the lenders, or the trust established by a group of lenders is the policyholder, the dividends have traditionally been apportioned among the participating banks and finance agencies. No part of the dividend was returned to the consumer unless his agreement with the lender so provided.
Petitioners argue that in the late 1950’s, the Legislature and the Governor were concerned that some insurers were *605 charging substantially higher premiums than necessary on credit insurance. It was determined that there were two methods for regulating dividends: (1) by permitting the superintendent to regulate premium rates, and (2) by empowering the superintendent to require the allocation of dividends to individual borrowers rather than to the lenders.
In his report to the Legislature in 1958, the then superintendent noted that allocation of dividends to individuals “appear[s] to be impractical because of problems of administration and enforcement” (State of New York, Ninety-Ninth Annual Report of the Superintendent of Insurance for the Year Ended December 31, 1957, NY Legis Doc, 1958, No. 115, p 34a; accord see Report of the Interdepartmental Committee on Insurance Sold in Connection with Instalment Sales and Related Matters, NY Legis Ann, 1958, p 419).
Petitioners aver that in recognition of the practicalities the Legislature enacted sections of the Insurance Law which regulate premium rates for credit insurance and serve as the enabling legislation for the superintendent to promulgate regulations (see, e.g., Insurance Law, § 204, subd 1, par [c], regulating group life insurance premiums; § 176, subd 2, pars b-d, regulating and promoting competition for all types of insurance and requiring approval of premium rates by the superintendent; § 154, subd 7, requiring life, health and accident insurers to file forms of policies for credit insurance together with premium rates for them).
They argue that where the Legislature intended that the debtor was to be refunded unearned premiums collected, it so specified. Thus, section 154 (subd 7, par [b]) of the Insurance Law provides that the superintendent shall promulgate regulations “which, among other things, shall require that, in the event of the termination of the insurance prior to the scheduled maturity date of the indebtedness or the last maturing installment thereof, there shall be an appropriate refund by the insurer to the policyholder of any amount collected from or charged to the policyholder for such terminated insurance, and an appropriate refund or credit by the policyholder or creditor to the debtor”.
*606 Furthermore, it is argued that where the Legislature intended that dividends on group life policies issued to employers as policyholders for their employees were to be returned to the employee, the statute so provided (Insurance Law, § 216, subd 2, which became eff Jan. 1,1940 and was later amd by L 1981, ch 153, § 1, eff July 28, 1981). Similarly, experience readjustment refunds and dividends on group accident and health policies provided by an employer were to “be applied by the employer for the sole benefit of the employees.” (Insurance Law, § 221, subd 9, L 1942, ch 919, § 2, amd L 1958, ch 744, § 2.)
Petitioner contends that the maxim expressio unius est exclusio alterius, applied to the construction of statutes generally (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240) should be applied in this case. The maxim applies where a law expressly describes a particular act, thing or person to which it shall apply. An irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded. In Servido v Superintendent of Ins. (53 NY2d 1041, revg on dissenting opn at 77 AD2d 70, 76-86), the court voided a regulation promulgated by the superintendent which excluded a person from coverage for first-party benefits under the No-Fault Law (Insurance Law, art 18, § 670 et seq.) because the Legislature had not authorized the exclusion. The Legislature had specifically enumerated (Insurance Law, § 672, subd 2), without mentioning this class, those classes which could be excluded.
Petitioner argues that in those instances where the Legislature intended that debtor/insureds would receive dividends it specifically provided and that its failure to so specify in this case of credit insurance was intentional (see Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205, 208-209).
Respondent, on the other hand, contends that he is “charged and invested with the rights, powers, and duties as expressed or reasonably implied by this chapter” (Insurance Law, § 10) and has broad power to “prescribe * * * official regulations, not inconsistent with the provisions of this chapter * * * (c) interpreting the provisions of this chapter” (Insurance Law, § 21). Respondent argues that *607 the courts have consistently recognized that these provisions vest the superintendent “with broad power to interpret, clarify, and implement the legislative policy” (Breen v Cunard Lines S. S. Co., 33 NY2d 508, 511). “Provided that his regulations are not inconsistent with some specific statutory provision, the superintendent may prescribe regulations ‘to effectuate any of the powers given to him by law’ (Matter of B & R Excess Corp. v Thacker, 37 Misc 2d 307, 309, affd 18 AD2d 1137), including any powers that the statute reasonably implies.” (Ostrer v Schenck, 41 NY2d 782, 785-786).
While it is apparent, at least superficially, that the requirement that policyholders apply dividends for the benefit of the debtor/insureds who pay the premiums is reasonable on its face, it has not been demonstrated that the regulation (11 NYCRR 185.10) is consistent with and may be reasonably implied from the statutes (Insurance Law, §§ 154,204). In both of these statutes, the Legislature provided that the vehicle for supervision by the superintendent would be regulation of premiums. Nor can it be stated that the allocation of dividends can be reasonably inferred from the power given him to regulate and approve premium rates. This is not a situation where the superintendent has promulgated regulations to clarify and implement the legislative policy (Breen v Cunard Lines S. S. Co., 33 NY2d 508, supra; Matter of Empire Mut. Ins. Co. [Barone], 85 AD2d 201; cf. 11 NYCRR 185.8 with Insurance Law, § 154, subd 7, par [b]). In this case, the superintendent has forged a new policy not reasonably to be implied from the statutes and in contradistinction to the history of these statutes.
Petitioners also attack regulation 185.7 (f) (11 NYCRR). Regulation 185.7 (f) requires that no credit insurance policy be for a period in excess of 10 years (par [2]) and for loans incurred after June 1, 1982 for periods in excess of three years, premiums may only be collected one year at a time, or up to three years with approval of the superintendent or subject to the approval of the superintendent, a premium may be computed for a period of the full term of the loan and may be collected no less frequently than annually; subject to any age limits the insurance must be *608 made available to the debtor for the full loan term without underwriting expenses subsequent to first underwriting (par [3]); and premiums remitted by the creditor shall provide coverage to debtors who are not more than two months overdue in their payments (par [5]).[2]
Petitioners contend that, as in the case of the regulation concerning allocation of dividends, there is no legal authority for these regulations (11 NYCRR 185.7 [f]). It is averred that under former regulations, debtors were permitted to purchase credit insurance for the entire period of the loan and permitted loan customers to borrow amounts necessary to pay the premium. Former regulation 11 NYCRR 185.7 (d) (eff Nov. 1, 1963) prohibited the collection of a single premium for a period exceeding 10 years without approval of the superintendent and could not be financed for more than 10 years without the superintendent’s approval. However, it is urged that in 1963, and thereafter until the last several years, consumer loans typically averaged 24-30 months in duration so that the 10-year standard had little practical effect upon petitioners or debtors. More recently, however, longer term loans have become the norm, with an average loan period of about 42 months. Clearly, the new regulation (11 NYCRR 185.7 [f] [3], eff June 1,1982) limiting the collection of premiums to up to three years will have great impact on both petitioners and debtors.
The superintendent contends that under the new regulation there is no prohibition on the financing of premiums for the full term of the loan. What is prohibited is a single premium financed for the full term. The new regulation merely requires that a single premium shall not exceed a three-year duration and that financing occurs periodically. Reducing the single premiums from 10 to 3 years would generally favor debtors since interest charges are so much higher (than they were in 1963) and the average amount of a loan so much greater that the interest charge added to a single premium, of multiyear duration, could equal or exceed the cost of the insurance. The superintendent thus argues that to allow collection of a single premium, which is financed for a period in excess of three years, would put *609 an unnecessary and costly burden on the debtor and, therefore, such regulation is within his powers specifically delegated in section 154 (subd 7, par [a]) of the Insurance Law which provides in pertinent part: “Without limiting his other powers and duties under this section, the superintendent shall not approve any such forms or premium rates if such premium rates are unreasonable in relation to the benefits provided.” (Accord Insurance Law, § 204, subd 1, par [c].)
Contrary to petitioners’ assertions, no conflict has been demonstrated with the provisions of articles 9 and 10 of the Personal Property Law, section 108 (subd 4, par [c], cl [iv]; subd 5, par [b]; subd 5-a, par [5]) of the Banking Law or the other sections specified.
This court agrees with petitioners’ contention that the essence of 11 NYCRR 185.7 is to prevent long-term financing of credit insurance premiums. However, such regulation is clearly a function of the superintendent’s powers to regulate and supervise premium rates and is reasonable.
The petitioners’ challenge of 11 NYCRR 185.7 has failed to establish that the regulation “is so lacking in reason for its promulgation that it is essentially arbitrary.” (Matter of Marburg v Cole, 286 NY 202, 212.) “The interpretation given a statute by an administering agency ‘if not irrational or unreasonable, should be upheld.’ (Matter of Howard v Wyman, 28 NY2d 434, 438.) As was observed in Mississippi Val. Barge Co. v United States (292 US 282, 286-287), ‘[t]he judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body.’” (Ostrer v Schenck, 41 NY2d 782, 786, supra.)
Accordingly, the motion to reargue is granted, the direction that hearings be held in accordance with section 141 of the Insurance Law is vacated, and the petition is granted to the extent of voiding those portions of regulation 27-A which require the allocation of dividends to creditor/debtors and the challenge to 11 NYCRR 185.7 is denied. The stay previously imposed by this court is vacated.
*610 APPENDIX
11 NYCRR 185.7 (f):

“Charging and collection of premium and identifiable charges.

“(1) Whenever an identifiable charge is collected from the debtor or whenever the creditor advances the identifiable charge to the debtor and assesses finance charges thereon, the group credit insurance policy shall contain a provision that the policyholder or creditor must remit such amount without undue delay to the insurer. Notwithstanding the preceding sentence, an insurer may include a provision in the policy to allow the policyholder or creditor to accumulate additional sums for future premium payment, not in excess of one modal premium, in an escrow account. For group credit insurance policies in effect on May 31, 1980 the provisions of this paragraph may be deferred until the policy anniversary or renewal date next following.
“(2) For indebtedness incurred prior to the later of June 1,1982 or the policy anniversary following March 1, 1982, no premium or identifiable charge may be charged to or collected from a debtor for a period of insurance in excess of 10 years at a time without the approval of the superintendent and subject to such conditions as he may impose.
“(3) In connection with loans in excess of three years, for indebtedness incurred after the later of June 1, 1982 or the policy anniversary following March 1, 1982, no premium or identifiable charges may be collected from a debtor for a period of insurance in excess of one year at a time, or subject to the approval of the superintendent, a premium or identifiable charge may be computed for a period of insurance up to the full term of the loan and may be collected no less frequently than annually. Notwithstanding the one year limitation in the preceding sentence, insurers may submit for consideration and approval a plan for the collection of premium or identifiable charges for periods of insurance in excess of one year, but in no event may such period of insurance exceed three years. Subject to any age limits, the insurance must be made available to the debtor for the full term of the loan, without any underwriting subsequent to any initial underwriting. For purposes of this paragraph, collection from a debtor shall include the remittance of amounts to the insurer in accordance with paragraph (1) of this subdivision.
“(4) The amount charged to a debtor for any credit life or credit health and accident insurance shall not exceed the premiums charged by the insurer, as computed at the time the charge to the debtor is determined. This shall not prohibit the determination of the aggregate premium to be remitted by the creditor from being calculated by approximate methods.
“(5) The total premium remitted by the creditor shall be assumed to provide coverage for those insured debtors whose payments are not more than two months overdue regardless of whether or not the debtor has paid a charge for such two months’ coverage.”
11 NYCRR 185.7 (g): “No insurer shall charge a premium rate for new indebtedness after the effective date of this Part in excess of the rate approved therefor pursuant to this section.”

. Retrospective rate credit or retrospective rate refund is an amount payable under nonparticipating group policies. It reflects the difference between the premium charged and the actual experience as calculated at the end of the policy year based upon a formula approved by the board of directors. It is analogous to a dividend payable to a participating group policyholder (11 NYCRR 185.10 [a] [1]).

. Full text of 11 NYCRR 185.7 (f) at Appendix.